OPINION
{¶ 1} Appellant, Sally J. Tryon, n.k.a., Sally Miller ("Ms. Miller"), appeals the February 6, 2007 nunc pro tunc judgment entry of divorce from the Trumbull County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we affirm.
 {¶ 2} Statement of Facts and Procedural History *Page 2 
 {¶ 3} This appeal has a long and convoluted history dating back to June 2000 when Ms. Miller initially filed a complaint for divorce against appellee, Michael J. Tryon ("Mr. Tryon"). After the filing of extensive motions and pleadings and hearings before the court, the parties entered into a number of stipulations, which were read into the record on October 9, 2001 and on January 7, 2002.
 {¶ 4} The parties expressly stipulated to an equalization of the marital property, noting at the October 9, 2001 hearing that "marital property shall be divided equally * * *." Recognizing "that there could be serious tax implications," Ms. Miller's counsel stated that the parties intended to get input from a CPA regarding the wording of the judgment entry. It does not appear on the record that this was done.
 {¶ 5} The parties also stipulated to the distribution of certain parcels of rental property and to the distribution of Ms. Miller's Thrift Savings Plan, which Ms. Miller contests in this appeal. With respect to the real estate, the parties owned fourteen rental properties, eight of which Mr. Tryon would retain exclusive ownership. The remaining six properties were to be deeded to Ms. Miller. The parties agreed that it was necessary to look at the net equity of the properties so that an equalization of the properties could be determined.
 {¶ 6} The parties stipulated as follows regarding three parcels of real estate which are at issue: (1) The parties agreed that the marital home at 240 Terre Hill, Cortland, with equity of $77,280, would be deeded to Ms. Miller and that she would receive $2,575 as a separate property interest in the property. Ms. Miller agreed that she would hold Mr. Tryon harmless from any indebtedness on the property; (2) The property located at 867 Hunter, Warren, which had an equitable interest of $27,230, *Page 3 
was to be deeded to Ms. Miller with no mortgage obligation, requiring Mr. Tryon to pay off the current mortgage obligation; (3) Ms. Miller was also to be deeded the property located at 1441 Kearney, Niles, with a net equity of $36,800, and with no mortgage obligation, again requiring Mr. Tryon to pay off the mortgage. It was further agreed that Mr. Tryon would cash in his share of Ms. Miller's Thrift Savings Plan to pay off the mortgages and that he would bear the tax consequences of cashing in this account to generate the funds to pay these two mortgages.
 {¶ 7} With respect to Ms. Miller's Thrift Savings Plan, the parties further stipulated that Mr. Tryon would receive his interest in the pension plan either via a QDRO (qualified domestic relations order) or he would receive one-half of the present day value as of October 9, 2001 "as he elects."
 {¶ 8} Counsel for Mr. Tryon prepared and submitted to the trial court a judgment entry, which the court adopted on December 17, 2002. Mr. Tryon's counsel added language to the original entry that awarded Mr. Tryon a credit (representing the mortgage balance) for two of the three parcels of property he deeded to Ms. Miller in the following amounts: (1) $13,200 credit on the 1441 Kearney property; and (2) $7,770 on the 867 Hunter property.
 {¶ 9} On December 31, 2002, Ms. Miller filed a motion for a new trial and a motion for relief from judgment, arguing, inter alia, that the trial court incorrectly awarded to Mr. Tryon the monetary credits for the two rental properties. The trial court denied Ms. Miller's motion. Ms. Miller appealed that decision to this court on the ground that the judgment entry of divorce did not reflect the agreement of the parties nor did it settle all issues before the court. She further argued that the trial court's denial of her *Page 4 
motion for new trial/relief from judgment is contrary to law and against the manifest weight of the evidence. The appeal was dismissed for lack of a final appealable order as no child support computation worksheet was attached to or incorporated into the final decree of divorce.
 {¶ 10} On June 16, 2004, Mr. Tryon filed a motion for contempt against Ms. Miller. He alleged that the evaluation of Ms. Miller's pension was completed on April 4, 2003, and that Ms. Miller had failed to comply with the court's order to pay him one half of the net equity of the pension within ninety days of the evaluation, as the parties agreed upon. On July 19, 2004, the court found Ms. Miller in contempt. Ms. Miller filed objections and asked the court to conduct further hearings, which the court agreed to do. On October 13, 2004, the court found that Ms. Miller owed Mr. Tryon $19,476.95, which included $10,319.99 for the pension. However, the court ordered the parties to schedule a separate hearing on the evaluations of the pensions, noting that if Ms. Miller's pension is valued at a higher amount, the excess amount would be considered. Ms. Miller filed objections to the magistrate's decision, which the court overruled.
 {¶ 11} Subsequently, on November 2, 2004, the trial court issued its first nunc pro tunc entry of divorce, which was once again prepared by Mr. Tryon's counsel. Ms. Miller filed objections to the judgment entry, reiterating that the judgment entry does not reflect the agreement of the parties. Specifically, Ms. Miller alleged that the nunc pro tunc judgment entry failed to order Mr. Tryon to reimburse her on a dollar for dollar amount those mortgage obligations she made payment on prior to Mr. Tryon's satisfaction of the mortgage obligations and again granted Mr. Tryon credits on two of the rental properties. *Page 5 
 {¶ 12} On November 24, 2004, Ms. Miller filed a motion for relief from judgment on the same grounds. Specifically, Ms. Miller argued, inter alia, that Mr. Tryon was erroneously granted $57,035 in credits for certain parcels of real estate (including a "credit" of $36,065 on the marital residence at 240 Terre Hill, Cortland; $13,200 on 1441 Kearney Street, Niles; $7,770 on 867 Hunter, Warren), which was not agreed upon by the parties.
 {¶ 13} On December 2, 2004, Ms. Miller appealed the trial court's nunc pro tunc judgment entry. In the interim, on April 21, 2005 the trial court held a status conference for "attorneys only." According to the supplemental record filed with this court by Ms. Miller's counsel, at the conference, Ms. Miller's counsel brought to the court's attention various objections, including the fact that Mr. Tryon received improper credits; that the entry failed to reflect "dollar for dollar reimbursements;" and that the entry failed to restore Ms. Miller to her maiden name. At the end of the status conference, the trial court specifically asked counsel if there were any further objections, to which both parties indicated there were none.
 {¶ 14} On May 2, 2005, the trial court granted Ms. Miller's Civ.R. 60(B) motion finding that errors were made with regard to the marital equity remaining on the 240 Terre Hill property, 1441 Kearney Street property, and the 867 Hunter Street property. With respect to the marital property at 240 Terre Hill, the court found no error with awarding Mr. Tryon his half interest in the property. In determining the equity and valuations of the properties, the court added the amount of "marital equity" in the properties after the payment of the mortgage to Ms. Miller. As a result, the court found that Ms. Miller had "marital equity" of $50,000 on the 1441 Kearney Street property and *Page 6 
$35,000 equity in the 867 Hunter Street property. On August 2, 2005, this court dismissed the appeal for failure to prosecute.
 {¶ 15} On December 29, 2005, Ms. Miller filed a notice of the filing of the nunc pro tunc entry of divorce, which she alleged Mr. Tryon refused to sign. On November 16, 2006, Ms. Miller filed another 60(B) motion for relief from judgment, which Mr. Tryon opposed. Ultimately, on February 6, 2007, the trial court issued its second nunc pro tunc entry of divorce.
 {¶ 16} Ms. Miller filed the instant appeal, raising four assignments of error:
 {¶ 17} "[1.] The trial court committed prejudicial error to Plaintiff-Appellant and abused its discretion by adding, without the consent of the parties, a term to the parties' settlement agreement.
 {¶ 18} "[2.] The trial court committed prejudicial error to Plaintiff-Appellant and abused its discretion by failing to conduct a full and reasonable evidentiary hearing in response to Plaintiffs 60(b) motion.
 {¶ 19} "[3.] The May 2, 2005 order of the trial court committed prejudicial error to Plaintiff-Appellant and was an abuse of discretion by modifying the property settlement of the parties.
 {¶ 20} "[4.] The irregularities of the court proceedings have precluded Plaintiff-Appellant from having a fair trial and amount to an abuse of its discretion by the trial court."
 {¶ 21} Standard of Review
 {¶ 22} The issues in this appeal revolve around the enforceability of the parties divorce settlement agreement. "A trial court's authority to enforce in-court settlement *Page 7 
agreements is discretionary." Franchini v. Franchini, 11th Dist. No. 2002-G-2467, 2003-Ohio-6233, at ¶ 8; Kilroy v. Kilroy, 11th Dist. No. 2002-G-2470, 2003-Ohio-5214, at ¶ 11. "As such, the trial court's decision will not be disturbed on appeal unless it is clear that the trial court's decision was unreasonable, arbitrary, or unconscionable."Franchini at ¶ 8, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 23} "Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract.Walther v. Walther (1995), 102 Ohio App.3d 378, 383. The enforceability of an in-court settlement agreement depends upon whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced."Franchini at ¶ 9, citing Normandy Place Assoc. v. Beyer (1982),2 Ohio St.3d 102, 105-06.
 {¶ 24} Trial Court's Addendum to Judgment Entry
 {¶ 25} In her first assignment of error, Ms. Miller contends that the trial court abused its discretion by adding the following italicized provision to the judgment entry regarding the distribution of her Thrift Savings Plan. Ms. Miller acknowledges that the italicized portion of paragraph 5 of the February 6, 2007 judgment entry was initially hand-written by the court on December 17, 2002 and subsequently incorporated into both the November 2, 2004 and the February 6, 2007 nunc pro tunc judgment entry of divorce. Paragraph 5 reads as follows:
 {¶ 26} "5. Defendant shall receive a credit against monies due Plaintiff as hereafter calculated equal to one-half (1/2) of the present-day value of Plaintiff's interest in the Federal Employees Pension Plan as of October 9, 2001. * * * Net marital equity to *Page 8 
be determined as to all marital assets and liabilities as hereinafter stated when pension evaluated. Payment of one-half (1/2) marital netequity to be paid by party with more than fifty percent (50%) withinninety (90) days of pension evaluation being completed." (Emphasis added.)
 {¶ 27} Ms. Miller contends that the inclusion of this italicized language changed the terms of the marital property division and was not contemplated by the parties. Nor was it included in the parties' stipulations.
 {¶ 28} A review of the record reveals that this exact language was made part of the original December 17, 2002 entry of divorce and was adopted and incorporated into each subsequent nunc pro tunc entry of divorce, without objection by Ms. Miller. During the proceedings, the payment of Mr. Tryon's portion of the pension was put at issue and the trial court held Ms. Miller in contempt for failing to make the distribution to Mr. Tryon of his half interest in her pension. Even though this was at issue, Ms. Miller never objected to the inclusion of the italicized portion of paragraph 5. In fact, at no time during the proceedings did Ms. Miller object to this particular language. Nor did Ms. Miller voice any concern over this language when she filed objections to the trial court or when she filed her motions for a new trial or for relief from judgment.
 {¶ 29} Under these circumstances, because this issue was not raised to the trial court, Ms. Miller has effectively waived her right for us to consider this issue on appeal. "It is a well-settled rule of law that issues which were not previously raised at the trial court level cannot be raised for the first time on appeal." JP Morgan Chase Bank v.Ritchey, 11th Dist. No. 2006-L-247, 2007-Ohio-4225, at ¶ 27, citingState v. Awan (1986), 22 Ohio St.3d 120, at paragraph one of the syllabus. *Page 9 
 {¶ 30} However, even if this issue was properly before us, we would still find no abuse of discretion. This addition by the trial court is accomplishing the stated goal of the parties to have an equalization of property and provides a mechanism for accomplishing this equalization by ordering the party with more equity in the asset to pay the excess amount. This fully comports with the parties stipulated intent to equalize the distribution of property.
 {¶ 31} Ms. Miller's first assignment of error is overruled.
 {¶ 32} Failure of Trial Court to Hold Hearing on 60(B) Motion
 {¶ 33} In her second assignment of error, Ms. Miller contends that the trial court abused its discretion in failing to hold an evidentiary hearing in response to her 60(B) motion. She maintains that an evidentiary hearing is required whenever a party opposing the settlement agreement alleges fraud, duress, undue influence, or any other factual dispute concerning the existence of the terms of the settlement agreement.
 {¶ 34} We have previously held that a trial court abuses its discretion when it modifies a settlement agreement without first holding an evidentiary hearing. Kilroy, at ¶ 14. In Kilroy, the trial court adopted the appellee's modified judgment entry over appellant's objections. Appellant filed a 60(B) motion, which the court denied without a hearing. In finding that a hearing was required, we relied on the Supreme Court of Ohio decision of Rulli v. Fan Co. (1997),79 Ohio St.3d 374, where the court held that: "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Id. at syllabus. Based upon *Page 10 
this holding, Ms. Miller contends that the failure to hold an evidentiary hearing was an abuse of discretion. We disagree.
 {¶ 35} While we recognize that a hearing is required where the terms of an agreement are disputed or modified, an evidentiary hearing is not always required whenever a 60(B) motion is filed. In Hardesty v.Hardesty, 11th Dist. Nos. 2004-G-2582, 2005-G-2614, 2006-Ohio-5648, we noted that "in certain circumstances, it is appropriate for a court to rule on a Rule 60(B) motion based on the written materials in lieu of an oral evidentiary hearing." Id, at ¶ 38. In Hardesty, the parties stipulated that the 60(B) motion could be decided on the briefs. Based upon this stipulation, we found that the necessity for a hearing was not required.
 {¶ 36} Although this case is factually different thanHardesty in that the parties did not agree for the matter to be decided on the briefs, we nonetheless apply the rationale we espoused inHardesty and find that Ms. Miller's 60(B) motion could likewise be decided on the briefs and the stipulations the parties had entered into. To begin with, this is not a case where Ms. Miller was never afforded the right to a hearing. In fact, on October 9, 2001, January 7, 2002 and February 12, 2007, the court conducted hearings at which the parties entered into key stipulations that formed the basis of their settlement agreement. The parties stipulated as to the manner in which the assets would be evaluated and further stipulated that the assets were to be divided equally. Because the trial court understood that it was the intent of the parties to equalize the distribution of the property and because the court had before it the parties' stipulations, the court had before it sufficient information from which it could render its decision *Page 11 
without holding a hearing. Under these circumstances, the trial court was not required to hold another evidentiary hearing.
 {¶ 37} Moreover, the trial court agreed with Ms. Miller's position and granted her 60(B) motion. The fact that Ms. Miller finds fault with part of the trial court's decision granting her relief from judgment does not mean that she was entitled to a full evidentiary hearing. Furthermore, according to the supplemental record filed with this court by Ms. Miller's counsel, the trial court provided counsel with every opportunity to raise any other objections but counsel expressly stated there were none. Under these circumstances, the trial court should not be required to hold a full evidentiary hearing.
 {¶ 38} Ms. Miller's second assignment of error is overruled.
 {¶ 39} Alleged Modification of Property Settlement
 {¶ 40} In her third assignment of error, Ms. Miller contends that the trial court abused its discretion in modifying the property settlement agreement of the parties with respect to the transfer of real property. Specifically, she alleges that the trial court "contradicted the original settlement agreement between the parties by effectively transmuting [Mr. Tryon's] financial obligations to one of an equal division of assets, to which [Mr. Tryon] will receive a financial gain not intended by the parties herein."
 {¶ 41} At the outset, we reject Ms. Miller's complaint that the court abused its discretion by providing for "an equal division of assets." This is exactly what the parties bargained for and stipulated to. As for a "transmutation," Ms. Miller does not clarify how the property was transmuted nor does she explain how the division adversely impacts her. Apparently, Ms. Miller is objecting to the manner in which the court determined what the net equity was regarding some of the parcels of real estate. *Page 12 
 {¶ 42} However, a close look at the breakdown of the real property reveals that the value of the property Ms. Miller was awarded had an equity of $296,617 as compared to the property awarded to Mr. Tryon, which was valued at $279,379.[1] The trial court properly deducted the credits Mr. Tryon previously awarded himself when he prepared the prior judgment entries for the 1441 Kearney Road and the 867 Hunter properties. Then, in determining the net equity of these properties, the court added in the following amounts that Mr. Tryon had credited himself so that Ms. Miller's equity in these properties increased as follows:
 {¶ 43} 1441 Kearney-Under the November 2, 2004 decree, the property's equity was listed as $36,800, of which Ms. Miller received $23,600 and Mr. Tryon received a credit of $13,200. According to the February 6, 2007 nunc pro tunc entry, the equity was increased to $50,000 and was fully awarded to Ms. Miller.
 {¶ 44} 867 Hunter-Under the November 2, 2004 decree, the property's equity was listed as $27,230, with Ms. Miller receiving equity of $19,460 and Mr. Tryon receiving a credit of $7,770. According to the February 6, 2007 nunc pro tunc entry, the equity was increased to $35,000 awarded fully to Ms. Miller.
 {¶ 45} With respect to the marital home located at 240 Terre Hill, under the November 2, 2004 decree, the property's equity was listed as $77,280, with Ms. Miller receiving $41,215 and Mr. Tryon receiving $36,065. According to the February 6, 2007 nunc pro tunc entry, the equity remained the same but the entire amount of equity was awarded to Ms. Miller. This, too, was consistent with the parties' stipulation that Ms. Miller would be awarded and deeded the marital home. *Page 13 
 {¶ 46} A review of the stipulations reinforces that it was the parties' intent that the property division be equal. We find that the trial court's February 6, 2007 order serves to effectuate that intent. Moreover, the trial court modified its prior order to correct its errors and make the order consistent with the parties' stipulations. Consequently, we find that the trial court acted properly and did not abuse its discretion. Ms. Miller's third assignment of error is overruled.
 {¶ 47} In her fourth assignment of error, Ms. Miller reiterates her former arguments in an attempt to show that the irregularities in the trial court proceedings prevented her from having a fair trial. While we recognize that these proceedings have been long and drawn out, ultimately the trial court corrected its errors to reflect the parties' stipulations. Under these circumstances, we disagree with Ms. Miller's contention that she was denied a fair trial. Ms. Miller was given the opportunity to present her position, and, was in fact granted relief from judgment. We overrule Ms. Miller's fourth assignment of error.
 {¶ 48} The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division is affirmed.
CYNTHIA WESTCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur.
[1] These amounts were calculated when adding together all parcels of real property awarded and distributed to the parties. *Page 1