[Cite as *In re Marriage of Beynenson*, 2013-Ohio-341.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**GEAUGA COUNTY, OHIO**


| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF: | : | **O P I N I O N** |
| SVETLANA BEYNENSON, | | |
| Petitioner-Appellee, | : | |
| | | **CASE NO. 2012-G-3066** |
| and | : | |
| PETER BEYNENSON, | : | |
| Petitioner-Appellant. | : | |


Civil Appeal from the Geauga County Court of Common Pleas, Case No. 03 DK 001016.

Judgment: Affirmed.


*Gregory J. Moore*, 55 Erieview Plaza, Fifth Floor, Cleveland, OH 44114 (For Appellee).

*Louis J. Carlozzi*, 1382 West Ninth Street, Suite 215, Cleveland, OH 44113 (For Appellant).


MARY JANE TRAPP, J.

{¶1} Peter Beynenson appeals from a post-decree judgment of the Geauga County Court of Common Pleas, which adopted a magistrate's decision determining the amount of his outstanding support obligations and holding him in contempt for his failure to pay. After a careful review of the record and pertinent law, we affirm the trial court's judgment.

**Substantive History and Procedural Background**

{¶2}  The Beynensons dissolved their marriage in 2003. Pursuant to the separation agreement adopted by the court, Mr. Beynenson agreed to pay $1,744.46 in spousal support and $281.24 in child support each month.  Mr. Beynenson failed, however, to pay the spousal and child support as required.

{¶3}  In June 2010, Mr. Beynenson filed a motion requesting that the court determine his spousal and child support arrearage.  In response and ten months later, Mrs. Beynenson filed a motion for contempt, asking the court to find Mr. Beynenson in contempt for his failure to pay his support obligations.

{¶4}  Mr. Beynenson (as well as Mrs. Beynenson) is a native speaker of Russian, and the trial court granted his request for an interpreter for the hearing before the magistrate.  The hearing was held on May 6, 2011, but recessed due to a time constraint and then resumed on August 26, 2011.  On June 16, 2011, Mr. Beynenson's counsel moved for leave to withdraw as counsel on the ground that Mr. Beynenson failed to pay his attorney's fees.  The court granted the request on July 21, 2011.  When the proceedings resumed on August 26, 2011, Mr. Beynenson was without counsel.

{¶5}  After the hearing, the magistrate issued a lengthy decision.  The magistrate summarized Mr. Beynenson's testimony as follows:

{¶6}  "[Mr. Beynenson] claims he has insufficient income and resources to pay his support obligations.  He claims he is disabled from an alleged back injury that prevents him from engaging in his former occupation as an automobile mechanic and body-shop operator.  He testified that deposits to his checking account at Bank of America are not 'his money' but actually belong to someone else, and he is just handling the money temporarily for them.  He testified that he cannot find permanent full time work and is now mowing lawns, earning $650 per month.  He made other claims

2

about his financial condition and activities the general tenor of which is that he has virtually no money, cannot earn a living, and depends on the generosity of others to survive."

**{¶7}** The magistrate found Mr. Beynenson's testimony not credible and accorded it no weight, concluding that he failed to demonstrate that his income now is less than what it was in December 2003, and failed to meet his burden of demonstrating an inability to pay. The magistrate denied Mr. Beynenson's motion to reduce his support payments, found him in contempt, and imposed a 30-day jail term, which he could purge by paying $2430.84 in support obligations per month until the entire arrearages has been paid in full. The court also awarded Mrs. Beynenson attorney's fees.

**{¶8}** Mr. Beynenson obtained new counsel and filed objections to the magistrate's decision. The only ground for his objections was his allegation that the interpreter provided inadequate or inaccurate interpretation. He asked for a new hearing. The trial court overruled his objections and adopted the magistrate's decision.

**{¶9}** Mr. Beynenson now appeals, bringing the following assignments of error for our review:

**{¶10}** "[1.] The appellant was denied he due process rights when he was denied a competent interpreter."

**{¶11}** "[2.] The appellant was denied his due process rights when his counsel was granted leave to withdraw during a recess of the hearing."

### Standard of Review

**{¶12}** "On appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." *Brown v.*

3

*Gabram*, 11th Dist. No. 2004-G-2605, 2005-Ohio-6416, ¶11, citing *Lovas v. Mullett*, 11th Dist. No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, *5-6 (July 29, 2001). Furthermore, we review a trial court's decision regarding spousal and child support also under an abuse of discretion standard. *Gaul v. Gaul*, 11th Dist. No. 2009-A-0011, 2010-Ohio-2156, ¶24 and ¶31. The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto* (1925), 112 Ohio St. 667, 676-678. The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

### The Interpreter Issue

{¶13} In his first assignment of error, Mr. Beynenson claims he was denied his due process rights because he was denied a competent interpreter.

{¶14} In *Columbus v. Lopez-Antonio*, 153 Ohio Misc.2d 4, 2009-Ohio-4892 (M.C.2009), the Columbus municipal court reviewed extensively the law regarding the use of an interpreter in court proceedings, concluding that Ohio law requires the courts to appoint qualified interpreters. *Id.* at ¶9. It cited R.C. 2311.14(A)(1), which states, "[w]henever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person." *Id.* *See also State v. Jama*, 189 Ohio App.3d 687, 695, 2010-Ohio-4739 (10th Dist.) (a court must appoint a qualified

4

interpreter for parties needing that assistance during legal proceedings pursuant to R.C. 2311.14(A)(1)).

{¶15} Moreover, Evid.R. 604 addresses the use of interpreters, stating "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." Evid.R. 604 mandates an interpreter must qualify as an expert, pursuant to Evid.R. 702. *State v. Newcomb*, 10th Dist. Nos. 03AP-404 and 03AP-961, 2004-Ohio-4099, ¶21.

{¶16} As the court in *Lopez-Antonio* noted, neither R.C. 2311.14 nor any other provision of the Ohio Revised Code provides guidance regarding how to determine whether an interpreter is qualified; nor does Ohio case law provide much direction other than to reiterate that interpreters must be qualified. That court, however, found Chapter X of "The Supreme Court of Ohio, Interpreters in the Judicial System: A Handbook for Ohio Judges," titled "Establishing Qualifications for Interpreters" helpful. The handbook provides a model voir dire for establishing the qualifications of an interpreter. Questions proposed by the model voir dire include: "How did you learn the foreign language?"; "Did you formally study the language in school? How long?"; "How many times have you interpreted in court?"; "Have you interpreted for this type of hearing or trial before? How many times?" *Id.* at ¶13. [1]

{¶17} In this case, the May 6, 2011 transcript reflects that before the proceedings began, the magistrate administered an oath to the interpreter and engaged

---

1. We note the new Sup.R. 88(D) provides that when appointing a foreign language interpreter, a court shall appoint a Supreme Court certified foreign language interpreter whenever possible. In the event that a certified interpreter does not exist or is not reasonably available, the court may appoint a "provisionally qualified interpreter," and, in the event that a provisionally qualified interpreter does not exist or is not reasonably available, a "language skilled interpreter." The rules also set forth requirements for being considered certified, provisionally qualified, and language-skilled. We note the interpreter in the present case testified that she was working on being certified, but was not yet certified. However, Ohio Sup.R.88 is not effective until January 1, 2013, and therefore not applicable in the instant case.

in an extensive colloquy to qualify the interpreter as an expert witness, and also afforded Mr. Beynenson's counsel an opportunity to question the interpreter regarding her qualifications.

{¶18} The interpreter testified that she was qualified to translate from Russian to English and from English to Russian; she is a native speaker of English, but of Russian descent and spoke Russian at home. She had interpreted in over one hundred court proceedings, including divorces, civil protection orders, and custody hearings, and she was familiar with legal terminology. She was not affiliated with any party or the court, and understood she was not to offer advice or interject her opinion in the proceeding. Mr. Beynenson's counsel examined her as well, primarily regarding her compensation.

{¶19} Our review of the transcript, therefore, indicates that the court properly confirmed the interpreter's qualification before the proceedings began. We also note that neither Mr. Beynenson nor his counsel raised any objections regarding the magistrate's voir dire in qualifying the interpreter as an expert, and thus waived the issue. *See State v. Rosa*, 47 Ohio App.3d 172 (8th Dist.1988) (error in failure to qualify an interpreter as an expert witness is waived when the party requesting the interpreter fails to object in the trial court to the failure to so qualify the interpreter).

{¶20} In his objections to the magistrate's decision, Mr. Beynenson alleged that the interpreter failed to provide accurate and complete translation. He claims that the May 6, 2011 hearing transcript shows that the proceeding was replete with "translation issues." As proof, he alleged there were 25 instances of notations by the court reporter indicating "independent discussion between interpreter and witness," and 80 instances where Mr. Beynenson's answers to counsel's questions were not translated into English and the court reporter noted "no English translation uttered." He claimed "he was

6

rendered silent at best, or possible [sic] portrayed as incredible because of a completely inaccurate translation." Mr. Beynenson, however, did not specify any particular instance where his testimony was mistranslated or not translated.

{¶21} In overruling his objections to the magistrate's decision based entirely on the inadequacy of the interpreter, the trial court fully addressed the issue in its judgment entry. The trial court first observed that Mr. Beynenson submitted only the transcript from May 6, 2011, but not August 26, 2011, portion of the hearing, claiming that because of the interpreter's failings, the court reporter could not provide an accurate transcript of his entire testimony. The trial court noted that "[d]espite the Court's suggestion that Petitioner Peter Beynenson could submit an affidavit in lieu of a transcript pursuant to Civ.R. 53(D)(3)(b)(iii), Petitioner Peter Beynenson has chosen to request a new hearing rather than provide such an affidavit. Petitioner Peter Beynenson has not offered any reason why an affidavit in lieu of transcript could not be provided." Addressing Mr. Beynenson's claim that the interpreter was not adequate, the trial court gave following analysis:

{¶22} "The Court has read the transcript of the May 6, 2011, hearing before the Magistrate. Without question, the interpreter does not meet the aspirational goals set forth in the Ohio Supreme Court Rules of Superintendence. That being said, contrary to Petitioner Peter Beynenson's assertions, the failure of the interpreter to perform a simultaneous translation and the fact that [Mr. Beynenson] insisted upon answering many questions in English and others in Russian, does not mean that the evidence presented to the Magistrate was not understood by the Magistrate or the parties or that the evidence was insufficient to support the Magistrate's Decision.

{¶23} "* * *

7

{¶24} "* * * [A]though there are several instances wherein the Court stenographer indicates that the answer was given by [Mr. Beynenson], not the interpreter, and that the answer was not in English[,] [h]owever, it is very clear that the Magistrate, counsel, and the parties understand Petitioner's answers and responded accordingly. Petitioner Peter Beynenson's answers are clearly affirmations or denials, similar to a nod or shaking of the head. The Magistrate, counsel, and the parties show no indication that they did not comprehend the responses that Petitioner Peter Beynenson gave to the questions asked. It is also clear that Petitioner Peter Beynenson fully understood the questions, only asking clarification once.

{¶25} "More significantly, it is obvious that Petitioner Peter Beynenson failed to provide any evidence beyond his own self-serving testimony that he was physically and medically unable to work and pay support obligations. It is also obvious that Petitioner Peter Beynenson voluntarily relocated to Florida and once there he has failed to be legitimately employed, despite a number of deposits to his bank accounts. Petitioner Peter Beynenson's attempts to explain and justify those deposits were hardly credible; that was not a matter of interpretation, it was a matter of believability."

**Our Review**

{¶26} We first note that Mr. Beynenson never objected to the interpreter's performance at the hearing. In *State v. Rivera*, 99 Ohio App.3d 325 (11th Dist.1994), appeal not accepted, 71 Ohio St.3d 1435 (1994), this court refused to consider the appellant's complaint regarding the effectiveness of the interpreter, because the appellant did not call to the court's attention the alleged interpreter problem at trial where such error could have been avoided or corrected by the trial court. *See also State v. Esqueda*, 10th Dist. No. 96APA01-118, 1996 Ohio App. LEXIS 4289

8

(September 30, 1996) (failure to object to the adequacy of the translation at the trial court constituted a waiver of the alleged error). Accordingly, Mr. Beynenson has waived the issue.

{¶27} Even if the issue were not waived, our own independent review of the transcript supports the trial court's assessment regarding the adequacy of the interpreter.

{¶28} The transcript shows that Mr. Beynenson appeared to understand many of the questions posed without the help of the interpreter, and, from time to time, answered the questions in English directly, without waiting for the interpreter to translate the questions from English to Russian. He had to be reminded on several occasions by his counsel to speak in Russian only. On at least one occasion he showed a good command of English and familiarity with legal terminology – when the questioning turned to an unrelated criminal matter regarding his alleged passing of bad checks in a different court, he answered in English: "Criminal it's closed because it's dismissed right now."

{¶29} Regarding the multiple instances where Mr. Beynenson's answers in Russian was not translated into English by the interpreter, our review of the transcript indicates that in all such instances the question posed was a yes/no question requiring a simple one-word answer. Reading the colloquy in context, it appears Mr. Beynenson's simple yes/no answer in Russian required no translation into English, as the court and the parties all seemed to understand his (yes/no) answers in Russian. At no point did the court or counsel complain of the lack of English translations of Mr. Beynenson's answer to these yes/no questions.

**{¶30}** Regarding the multiple instances where the court reporter noted an independent discussion between the interpreter and Mr. Beynenson, from our reading of the transcript it appears that such discussions were for the clarification of the questions asked. We recognize that such independent discussions between the witness and the interpreter are not ideal under the method of "simultaneous interpretation."[2] We do not see how Mr. Beynenson was prejudiced, however.

**{¶31}** Notably, Mr. Beynenson's counsel is *also* a native speaker of Russian. If the "discussions" between the interpreter and Mr. Beynenson had been improper or indicative of an inadequacy of the interpreter, his counsel should have brought it to the attention of the court. Indeed, page 59 of the transcript reflects a colloquy where Mrs. Beynenson's counsel asked Mr. Beynenson if he can pay some amount of support, and, after the interpreter translated the question, Mr. Beynenson's counsel objected, saying, "[t]hat was the wrong translation." This was the only occasion his counsel raised any concerns regarding the accuracy of the interpretation.

**{¶32}** Our review of the transcript also indicates that the magistrate made efforts to ensure that Mr. Beynenson was able to understand the questions. On one occasion, he reminded Mrs. Beynenson's counsel to ask straightforward questions and to avoid rhetorical flourishes or convoluted questions with embedded negatives.

**{¶33}** In any event, despite his general complaint of the interpreter's inadequate performance, Mr. Beynenson has not alleged any specific instance of inaccurate or incomplete translation of his testimony, either in his objections to the magistrate's decision or on appeal. In its judgment, the trial court summarized the substance of Mr.

---

2. Under Ohio Sup.R. 80(J), "simultaneous interpretation" means "interpretation in which, after a brief pause to listen for or view key grammatical information, a foreign language interpreter or sign language interpreter renders in a target language the message of a person rendered in a source language as the person continues to communicate."

10

Beynenson's testimony; on appeal, he does not claim any part of his testimony was inaccurately or incompletely translated.

{¶34} While Mr. Beynenson claims that his failure to provide a transcript for the second day of hearings was due to the court reporter's inability to provide an accurate transcript because of the translator's inaccurate translation, he has not availed himself of the alternatives available to him via Civ.R. 53(D)(3)(b).

{¶35} After Mr. Beynenson filed his objections to the magistrate's decision, the trial court, upon its own motion, stated in a January 12, 2012 order that "[t]o date, no transcript of the proceedings before the Magistrate has been filed with this Court, nor has Defendant submitted an affidavit in lieu of a transcript pursuant to Civ.R. 53(D)(3)(b)(iii)." The trial court essentially drew Mr. Beynenson a procedural map to follow when faced with the absence of a transcript, but Mr. Beynenson failed to follow the trial court's suggestion. In its order, overruling Mr. Beynenson's objections, two months later, the trial court reiterated the fact that "Rule 53(D)(3)(b)(iii) addressed instances when a verbatim transcript is unavailable to the Court. Despite the Court's suggestion that Petitioner Beynenson could submit an affidavit in lieu of a transcript pursuant to Civ.R. 53(D)(3)(b)(iii), Petitioner Beynenson has chosen to request a new hearing rather than provide such an affidavit. Petitioner Beynenson has not offered any reason why an affidavit in lieu of transcript could not be provided."

{¶36} Civ.R. 53(D)(3)(b) states, and we have consistently held, that "in objecting to a magistrate's finding of fact, a party must support the objection with 'a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available.'" *Bodor v. Fontanella*, 11th Dist. No. 2005-T-0091, 2006-Ohio-3883, ¶18. "[T]he rule places the burden of providing a transcript or

affidavit expressly upon the objecting party, and that the failure to meet this burden before the trial court precludes the party from raising the factual issue on appeal." *Id.* at ¶19. This burden even extends to the objecting party in cases where an audio recording was supposed to be made of the proceedings, but no recording was ever made. *See Brown v. Gabram*, 11th Dist. No. 2004-G-2605, 2005-Ohio-6416, ¶32.

**{¶37}** At this stage, we cannot provide relief because it is incumbent upon the individual filing the objections to provide the transcript in full, or provide an affidavit in lieu of transcript. "[W]hen factual issues cannot be considered as a result of noncompliance with the rule, the scope of our review is limited to determining whether any error of law or other defect is readily apparent on the face of the magistrate's decision." *Bodor, supra,* at ¶19, citing *Brown* at ¶18, quoting *Lovas v. Mullett*, 11th Dist. No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, *5 (July 29, 2001).

**{¶38}** After reviewing the limited record before the trial judge, therefore, we could find no evidence that the interpreter was unqualified or failed to provide adequate translation for the proceedings. There is no evidence in the record, and none from the transcript from day one of the hearing, indicating that Mr. Beynenson was unable to understand the questions or that the interpreter mistranslated what he testified, even if he *had* preserved the alleged error. The first assignment of error is without merit.

**Waiver of Counsel Issue**

**{¶39}** Regarding the claim that he was denied due process rights because he lacked counsel at the resumed hearing on August 26, 2011, the record shows Mr. Beynenson's counsel requested withdrawal on June 16, 2011 because of lack of payment from him. Mr. Beynenson did not raise the issue of lack of counsel in his objections to the magistrate's decision. A failure to raise an objection to the

12

magistrate's decision waives the error on appeal. Civ.R. 53(D)(3)(b)(iv). Also, as a general rule, we will not consider errors which were not brought to the trial court's attention but raised for the first time on appeal. *See, e.g.*, *Fazenbaker v. Fazenbaker*, 11th Dist. No. 2009-T-0131, 2010-Ohio-5400, ¶16; *Tryon v. Tryon*, 11th Dist. No. 2007-T-0030, 2007-Ohio-6928, ¶29. Moreover, Mr. Beynenson did not submit either the transcript for the August 26, 2011 proceeding or an App.R. 9(C) statement. "Unless the record transmitted on appeal includes an App.R. 9(C) statement that affirmatively demonstrates error, we must presume the trial court committed no error despite the fact the record is not complete."' *Tochtenhagen v. Tochtenhagen*, 11th Dist. No. 2009-T-0011, 2010-Ohio-4557, ¶47, quoting *Wood v. Wood*, 11th Dist. No. 2009-T-0082, 2010-Ohio-1154, ¶20. For these reasons, the second assignment of error is overruled.

{¶40} The judgment of the Geauga County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

13