[Cite as *Shiloh Ministries, Inc., v. Simco Exploration Corp.*, 2019-Ohio-2291.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| SHILOH MINISTRIES, INC., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | | **CASE NO. 2018-T-0057** |
| - vs - | : | |
| SIMCO EXPLORATION CORPORATION, et al., | : | |
| | : | |
| Defendants-Appellees. | | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CV 00057.

Judgement: Affirmed in part, reversed in part, and remanded.

*Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 44481 (For Plaintiff-Appellant).

*Molly K. Johnson*, Johnson and Johnson Law Office, 12 West Main Street, Canfield, OH 44406 (For Defendants-Appellees).

MARY JANE TRAPP, J.

{¶1} This is an appeal from the judgment entry of the Trumbull County Court of Common Pleas, in which the trial court overruled objections filed by appellant, Shiloh Ministries, Inc. ("Shiloh"), and adopted the magistrate's January 26, 2018, Decision and Recommendation granting appellee, Ohio Valley Energy Systems ("OVE"), a prescriptive easement for oil and gas on Shiloh's two adjoining parcels of land.

{¶2} Shiloh appeals, raising the following three arguments against the prescriptive easement granted in OVE's favor: (1) it was improperly raised due to the trial court's findings on summary judgment, (2) OVE lacked standing to do so, and (3) finally, the scope is impermissibly vague.

{¶3} We find the trial court's rulings on the motions for summary judgment did not preclude consideration of the affirmative defense of a prescriptive easement at trial. OVE had standing to raise the affirmative defense because it established its long history of using the southern parcel for its operations. We also find the prescriptive easement granted by the trial court is not vague in scope. We do find, however, it is vague as to the scope of the relative use of the easement by each party and apportionment of future expenses incurred for repair and maintenance of the easement as necessary to prevent the use of the easement from becoming an annoyance or nuisance to Shiloh. Thus, finding the last assignment of error to have merit in part, we affirm in part, reverse in part, and remand for further proceedings accordingly.

## Substantive and Procedural History

### *The Parties and Parcels of Land at Issue*

{¶4} Pastor and president, Reverend Nicholas Furries, leads Shiloh, the owner and lessor of the two adjoining parcels of land at issue (the "southern parcel" and "northern parcel"). Shiloh's predecessor in interest, Lighthouse Tabernacle of the Niles Peoples Full Gospel Mission Church ("Lighthouse"), led by Reverend Frank M. Hewison and his wife, Lois A. Hewison, was the original party to the oil and gas agreements.

{¶5}   Initially, there was a pastor's house on the northern parcel and a church on the southern parcel.  Sometime before 2004, the pastor's house was demolished.  The church then renovated and expanded so that it now sits on both parcels of land.

{¶6}   OVE is the successor corporation of Simco Exploration ("Simco").  Its primary business is obtaining leases and drilling/managing gas wells.  Olympic Oil and Gas, Inc. ("Olympic") was a subcontractor for Simco.  Olympic entered into the original Oil and Gas Lease and Non-Drilling Lease Agreements with Shiloh on Simco/OVE's behalf.  Thus, Olympic is the signature party to the original lease agreements.

{¶7}   The oil and gas well, "Cheyenne #2," is located on a property adjacent to the northern parcel.  Cheyenne #2 was drilled prior to the execution of the agreements in 1989.  It was at that time Olympic approached Lighthouse because it needed a location to place the tanks, a meter, and the other equipment associated with the well.

### *The Agreements*

{¶8}   There are three agreements between the parties.  On October 18, 1989, Lighthouse entered into an "Oil and Gas Lease Agreement," which permitted the lessee to conduct surface operations and for equipment to be placed on the northern parcel.  It also granted Lighthouse a right to a certain amount of free gas.[1]

{¶9}   On January 19, 1990, the parties entered into a Non-Drilling Oil and Gas Lease Agreement for the use of the southern parcel.  This agreement permits the lessee to utilize the property "with other properties, which other properties shall bear the burden of development."

---

1. In the original 1989 Oil and Gas Agreement, the free gas was piped to the pastor house on the northern parcel.  In 2004, the agreement was amended to provide for 125,000 cubic feet of gas per year to the church on the southern parcel.

{¶10} Lastly, there is a Meter Site Agreement between Dominion Energy's predecessor, East Ohio Gas Company ("Dominion") and Lighthouse granting Dominion the right to place equipment and pipelines on the southern parcel to transport gas to and from the well.

{¶11} The northern parcel contains underground equipment, pipes and tanks, which hold the oil and gas. Piping runs to the southern property where there is a meter, regulators, and piping. To access the holding tanks on the northern property, OVE crosses the southern property by way of the church's parking lot. Both OVE and Dominion also access the southern property to check and maintain the meters.

### Summary Judgment

{¶12} On January 11, 2016, Shiloh filed a complaint against OVE setting forth four claims for relief: a declaratory judgment that the leases have terminated due to lack of commercial production; a declaratory judgment ruling that the leases have terminated due to lack of commercial production; a breach of contract for the placement of pipeline and meter site equipment on the southern parcel; and lastly, trespass for the installation of equipment and continued operations on the southern parcel.

{¶13} Both parties filed motions for summary judgment. The trial court found Shiloh was "entitled to judgment" on its breach of contract and trespass claims because there was no dispute of fact that OVE continually entered upon the southern parcel and that equipment had been installed on the southern parcel without permission in violation of the agreement. The trial court further found that the elements of continuing trespass had been met.

4

**{¶14}** OVE argued that the issues raised by Shiloh were barred by the doctrine of res judicata because Shiloh failed to raise them in the parties' previous 2014 suit.[2] The court agreed with this argument in part, finding Shiloh was entitled to judgment on the claims of trespass and breach of contract only from 2014 to the present since there were continuing violations after the date of judgment in the last action.

**{¶15}** Turning to the issue of damages, the trial court found that Shiloh had not alleged the breach of contract to be material, and it independently found the breach was not material. While the court found there was no dispute of fact that the parking lot had been damaged by heavy machinery, it found Shiloh failed to provide evidence of the monetary cost of repair regarding its trespass claim or evidence of the diminution of the land's value as to its breach of contract claim; thus, genuine issues of material fact remained.

**{¶16}** Neither party raised the issue of OVE's claim of adverse possession/prescriptive easement in their respective summary judgment motions.

**{¶17}** After seemingly granting partial summary judgment in favor of Shiloh on trespass and breach of contract claims and partial summary judgment in favor of OVE on its res judicata claim, the trial court ruled "both the Defendant and the Plaintiff's Motions for Summary Judgment are DENIED. Case to proceed."

### The Magistrate's Hearing and Decision

---

2. Shiloh filed suit in 2014, praying for an accounting of all production and receipts for oil and gas sales and a reconciliation of the property owners' royalties; an accounting of all charges for Shiloh's natural gas usages; and a temporary and permanent injunction restraining OVE from interrupting Shiloh's free gas supply and damages. The court found OVE erroneously overbilled Shiloh in the amount of $679.32 and encouraged the parties to implement a process whereby Shiloh could obtain free gas from Dominion rather than from the well.

5

{¶18} The magistrate conducted the trial and issued a decision finding that Shiloh failed to provide any evidence showing Cheyenne #2 was not commercially productive. The magistrate found that Shiloh did provide evidence of a continuing violation for trespass and breach of contract since the April 27, 2015 judgment of the previous suit but that the breach of contract was not material. While the magistrate found that the parking lot was damaged by OVE's regular use, it also found that Shiloh did not introduce sufficient evidence of the monetary cost to repair the parking lot caused by OVE's use. Further, the magistrate found that Shiloh failed to introduce any evidence of the diminution of the value of the property due to the presence of the meter and the value. Thus, there was no evidentiary foundation for a determination as to the reasonableness of the restoration costs. Finally, the magistrate found that OVE had established all the elements of a prescriptive easement and that Shiloh failed to present evidence of permissive use.

{¶19} The decision imposed "an easement by prescription across Plaintiff's land encompassing the meter site and reasonable right of entry across the non-drilling lease parcel to access both the meter site and well equipment on the adjacent parcel."

{¶20} The trial court adopted the magistrate's decision after overruling Shiloh's objections and reviewing OVE's response and the transcript.

{¶21} Shiloh timely appealed, raising the following assignments of error:

{¶22} "[1.] The trial court erred when it permitted the appellee to assert the affirmative defense of an easement by prescription at trial.

{¶23} "[2.] The appellees do not have the requisite standing to claim an easement by prescription for the equipment on the southern parcel.

6

**{¶24}** "[3.] The trial court erred when [it] granted an easement by prescription across the southern parcel that was impermissibly vague."

## Standard of Review

**{¶25}** "On appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." (Citations omitted.) *In re Beynenson*, 11th Dist. Geauga No. 2012-G-3066, 2013-Ohio-341, ¶12.

**{¶26}** "The term of 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.'" *Id.*, citing *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). "The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

## The Use of a Prescriptive Easement as an Affirmative Defense

**{¶27}** Shiloh first contends that because OVE did not raise a prescriptive easement defense on summary judgment it was precluded from doing so at trial. Shiloh argues the trial court made clear and explicit findings regarding its claim of trespass and breach of contract in the court's summary judgment entry. Thus, the only material issue of fact remaining was the amount of damages per Civ.R. 56(D).

**{¶28}** Shiloh's argument is procedurally flawed whether we interpret the court's summary judgment decision as either a partial grant of summary judgment or an outright

7

denial of both parties' motions. OVE would not be prohibited from raising it at trial under either interpretation (whether Civ.R. 56(D) applied or not).

{¶29} Thus, if we take the position that the court's findings on summary judgment were in effect a grant of partial summary judgment, leaving only the issue of damages, nothing in Civ.R. 56(D) precludes OVE from raising the affirmative defense of a prescriptive easement at trial. Summary judgment as to less than all claims is interlocutory by its very nature and subject to change before a final judgment on the merits.

{¶30} "A party seeking summary judgment must specifically delineate the basis for which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 116 (1988).

{¶31} "The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence is well founded in Ohio law. 'The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment.' *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66. * * * 'Reading the requirement of *Harless*, *supra*, in conjunction with Civ.R. 56 and 7(B)(1), it can readily be seen that the moving party must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C)." *Id.* at 115.

{¶32} The same reasoning applies if we read the trial court's summary judgment

decision as a denial of both party's motions.  Whether Civ.R. 56(D) applies is immaterial because either party is free to raise a defense so long as material issues remain to be tried and the other party has a meaningful opportunity to respond.

**{¶33}** Shiloh's first assignment of error is without merit.

## Standing

**{¶34}** Shiloh next argues OVE does not have the requisite standing to claim an easement by prescription for the equipment on the southern parcel.  Shiloh contends the meter and pipes are solely the property of Dominion and governed by the Meter Site Agreement to which OVE is not a party.  Thus, Shiloh argues only Dominion, who is not a party to the case, can assert a prescriptive easement.

**{¶35}** To raise a prescriptive easement as an affirmative defense, OVE only needs to show a possessory interest in the estate in which they seek to quiet title, which in this case, is an easement of access. *Harris v. Dayton Power & Light Co.,* 2d Dist. Montgomery No. 26796, 2016-Ohio-517, ¶11.  There is no doubt OVE has demonstrated this use in its routine oil and gas equipment maintenance.

**{¶36}** For example, OVE regularly utilizes the pipes and meter on the southern parcel to check the tanks for oil.  Victor Masters, OVE's field supervisor and maintenance technician, testified that although Dominion is the owner of the equipment, the equipment is a "shared effort" of use, maintenance, and repair.

**{¶37}** In addition, OVE is permitted to access the property and regularly does so to access the tanks on the northern property per the Non-Drilling Oil and Gas Agreement so long as the well is operating.  The agreement states, in relevant part, that "the within Lease being granted solely for the purpose of permitting the Lessee to unitize the leased

9

property with other properties, which other properties shall bear all the burden of development."

**{¶38}** The court in *Harris, supra,* explained that "[a]n easement is a right, without profit, created by grant or prescription, which the owner of one estate, called the dominant estate, may exercise in or over the estate of another, called the servient estate, for the benefit of the former. *Malone v. Bd. of Zoning Appeals of Xenia Twp.,* 2d Dist. Green No. 06-CA-62, 2007-Ohio-3812, ¶10, citing *Trattar v. Rausch*, 154 Ohio St. 286 (1950), paragraph one of the syllabus. 'An easement in or over the land of another may be acquired only by grant, express or implied, or by prescription.' *Trattar* at paragraph two of the syllabus. 'Prescription is the acquisition of an easement, over the property of another, through adverse use of that property.' *Crawford v. Matthews*, 4th Dist. Scioto No. 97CA2555, 1998 WL 720734, 2 (Sept. 21, 1998). 'Prescription is, in essence a form of adverse possession. They differ in that prescription grants the adverse user an easement or incorporeal rights in the property, while adverse possession grants the adverse user legal title.' *Id.* at fn. 6." *Id.* at ¶12*.

**{¶39}** There is no question that OVE established standing to raise a prescriptive easement claim as it has a long history of using the southern parcel for its oil and gas operations.

**{¶40}** Shiloh's second assignment of error is without merit.

### The Prescriptive Easement is Not Impermissibly Vague as to Scope of the Easement Area

**{¶41}** In its third assignment of error, Shiloh contends that the prescriptive easement is impermissibly vague as the trial court failed to convey "any meaningful

10

dimension or scope," giving OVE "veritable free reign to cross the southern parcel where and as the Appellees see fit."

**{¶42}** At the outset, we note that Shiloh failed to raise the vagueness of the prescriptive easement's dimension and the scope of OVE's repair obligations in its objections to the magistrate's decision. Thus, Shiloh's third assignment of error is waived except for a claim of plain error.

**{¶43}** "'Matters referred to magistrates are governed by Civ.R. 53.' *Dinardo v. Dinardo*, 11th Dist. Lake No. 2016-L-111, 2017-Ohio-4379, ¶17. 'A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision * * *.' Civ.R. 53(D)(3)(b)(i). 'However, if a party fails to object on a particular basis, he waives the right to assign the court's adoption of that fact as an error on appeal "[e]xcept for a claim of plain error * * *."' *Dinardo, supra,* quoting Civ.R. 53(D)(3)(b)(iv). "'The objection process gives the trial court the opportunity to review the magistrate's decision, in light of a party's objections. As a result, the trial court may decide to adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. Civ.R. 53(E)(4)(b).'" *Dinardo, supra,* quoting *Arthur v. Trimmer*, 5th Dist. Delaware No. 02CA06029, 2003-Ohio-2034, ¶12." *Spencer v. Spencer,* 11th Dist. Portage No. 2017-P-0073, 2018-Ohio-4277, ¶33.

**{¶44}** "Plain error in civil cases is defined as error that 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Id.* at ¶35, quoting *Dinardo, supra,* at ¶19, quoting *Goldfuss v. Davidson,* 79 Ohio St.3d 116 (1997), syllabus.

11

**{¶45}** "In applying the plain error doctrine in civil cases, appellate courts must proceed with utmost caution, and limit the doctrine to those extremely rare cases where exceptional circumstances require its application to prevent a miscarriage of justice." *Id.* at ¶36, citing *Dinardo* at ¶20.

**{¶46}** We do not find plain error from the trial court's proceedings that would result in a manifest injustice inasmuch as the scope of the easement is clear.

**{¶47}** The trial court granted OVE "an easement by prescription across Plaintiff's lands encompassing the meter site and reasonable rights of entry across the non-drilling lease parcel to access the meter site and well equipment on the adjacent parcel."

**{¶48}** "The dimension and scope of an easement may be ascertained from the language of the conveyance and the circumstances surrounding the grant." (Citation omitted.) *Aurora Partners III, Ltd. v. Aurora*, 11th Dist. Portage No. 2013-P-0019, 2013-Ohio-4310, ¶17.

**{¶49}** The court granted OVE a prescriptive easement to continue using the southern parcel as it has been, i.e., to access the tanks on the northern parcel and to check the meters and equipment located on the southern.

**{¶50}** During the hearing, OVE submitted evidence by way of a plot plan marked as Exhibit E and testimony of its customary usage of the properties and hence the scope of the easement; namely, that trucks once or twice weekly, during normal business hours, access the southern parcel making use of its parking lot to check the meters and equipment. The trucks then access the northern parcel to check the tanks via the southern parcel's parking lot and a wooden bridge that leads them to the load line.

**{¶51}** There is quite simply nothing to suggest the prescriptive easement grants OVE a "veritable free reign to cross the southern parcel however it should so choose," as asserted by Shiloh or that OVE would stray from its customary practice of using the same described access route across the property for normal oil and gas well maintenance.

#### Future Maintenance and Repair of the Prescriptive Easement

**{¶52}** Shiloh also contends that the scope of OVE's repair obligation under the prescriptive easement was not defined. The magistrate reviewed the evidence only for damages as to the trespass and breach of contract claims. Specifically, the magistrate found that "the evidence does warrant replacement of the parking lot, especially given that the breach of contract and trespass claims are barred by res judicata prior to April 27, 2015, the date of the judgment in the prior proceedings." Shiloh failed, however, to introduce any evidence of the monetary cost to repair the parking lot as a result of OVE's use and to establish any damages by way of the diminution of the value of the property due to the presence of the meter and pipeline. OVE's future maintenance and repair obligations regarding prescriptive easement, however, were not determined by the trial court.

**{¶53}** Since a prescriptive easement is essentially an equitable remedy, we find it would be inequitable for OVE to be granted a prescriptive easement without addressing the responsibility for future maintenance and repairs of the easement. *Pinkerton v. Salyers*, 4th Dist. Ross No. 13CA3388, 2015-Ohio-377, ¶19 ("[E]asements created by prescription and estoppel are equitable remedies * * *").

**{¶54}** Shiloh's brief in lieu of closing arguments argued an approximate figure of $2,500 as the estimation of OVE's damage to the parking lot since 2014, but it offered no

13

evidence at trial to support this figure. Shiloh only presented testimony of the "terrible" condition of the parking lot, specifically "holes," without further description or location.

**{¶55}** The Fifth District Court of Appeals' decision in *Market Enterprises, Inc. v. Summerville*, 5th Dist. Stark No. 2001CA00315, 2002-Ohio-3692, provides guidance. "'The burden devolves upon the owner of the dominant estate, of making whatever repairs are necessary for his use [of the easement].' * * * The dominant estate is also required to make repairs if 'necessary to prevent the enjoyment of the right [from] becoming an annoyance and nuisance to the owner of the servient tenement, unless the grantor himself has expressly undertaken the performance of that duty.'" *Id.* at 2, citing *Natl. Exchange Bank v. Cunningham*, 46 Ohio St. 575, 589 (1889).

**{¶56}** As in the case before us, the trial court in *Market Enterprises, supra,* found the repairs and maintenance in a parking lot used by both parties were necessary. Based upon the trial court's finding that a pedestrian in the parking lot fell in a sinkhole, the Fifth District "conclude[d] the trial court implicitly found the parking lot was becoming or had become an annoyance or nuisance." *Id.* at 2. The court then determined that inasmuch as the easement did not address the responsibility of maintenance and repairs, and "because the repairs were necessary to prevent the lot from becoming an annoyance and nuisance, * * * the burden devolved upon [the dominant estate]. However, because the parking lot was used jointly between the parties, we find the trial court properly determined the relative use of each party and apportioned the expenses incurred in maintaining and repairing the easement accordingly." *Id.*

**{¶57}** We find this persuasive and applicable to this matter.

14

{¶58} Finding this assignment of error to be with merit, in part, we reverse the judgment, in part, and remand to the trial court on this limited basis to the trial court for further proceedings to determine the relative use of each party of the easement and accordingly apportion the future expenses incurred in maintaining and repairing the easement as necessary to prevent the use of the easement from becoming an annoyance or nuisance to Shiloh.

{¶59} The judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings.

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.