Day, J.
 

 Was there an abuse of judicial discretion by the trial court (1) “in discharging the jury and accepting a plea of guilty in the manner that it was done;” (2) “and in finding the defendant guilty of murder in the first degree, without hearing testimony after the plea was entered?” What is judicial discretion?
 

 Bouvier’s Law Dictionary gives this definition:
 

 “Abuse of discretion.
 
 A discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.”
 

 The term is comprehensively defined in 18 Corpus Juris, p. 1185, as follows:
 

 “This authority may be said, in a general way, to be the power of the judge to rule and decide as his best judgment and sound discretion dictate; and the term ‘judicial discretion’ or ‘discretion of the court’ is usually employed as designating the power mentioned. There are different kinds of discretion that may be exercised by the trial court; there is a discretion in the right to decide as the
 
 *677
 
 court pleases, or in the decision of what is just and proper under the circumstances, or according to the judgment of the court; but in all cases courts must exercise a discretion in the sense of being discreet, circumspect, and prudent, and exercising cautious judgment. * * * However incapable of exact definition, it is clearly recognized that discretion is not absolutely without elements, conditions, or limitations. The term implies the absence of a hard and fast rule, yet it should not be another word for ‘arbitrary will,’ ‘inconsiderate action,’ or ‘unstable caprice.’ ”
 

 Other definitions as made by the courts are as follows:
 

 In
 
 Sharon
 
 v.
 
 Sharon, Exr.,
 
 75 Cal., 1, 16 P., 345, the court said:
 

 “ ‘Abuse of discretion’ * * * does not necessarily imply a willful abuse, or intentional wrong. In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason — all the circumstances before it being considered.”
 

 In
 
 Murray
 
 v.
 
 Buell,
 
 74 Wis., 14, 41 N. W., 1010, this definition was given:
 

 “The term * * * as used in the decisions of courts and in the books, implying, in common parlance, a bad motive or wrong purpose, is not the most appropriate. It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.”
 

 “Where the court does not exercise a discretion in the sense of being discreet, circumspect, prudent, and .exercising cautious judgment, it is an abuse of discretion.” Words and Phrases.
 

 
 *678
 
 In the light of the foregoing definitions, was there an abuse of discretion “in discharging the jury and accepting a plea of guilty in the manner that it was done?” The statutory mandate in that behalf is brief in our Criminal Code, being Section 13633, General Code, which provides:
 

 “If the accused plead ‘guilty,’ such plea shall be entered on the indictment, and he shall be placed in the custody of the sheriff until sentence. ’ ’
 

 It is undoubtedly the privilege of a defendant in a criminal case to withdraw his plea of not guilty and tender a plea of guilty at any time before sentence; yet the trial judge should be satisfied that such plea is entered by the accused understandingly, with due consideration and forethought and not by deception or fraud, but in a full conception of his legal rights.
 

 Some jurisdictions deny the right of a judge to refuse to receive a plea of guilty, and compel the accused against his will to plead not guilty and submit to a trial, in a case in which he elects to plead guilty after being advised properly as to the nature of his act and its consequences.
 

 In the case of
 
 State
 
 v.
 
 Branner,
 
 149 N. C., 559, 63 S. E., 169, it is said by the judge rendering the opinion:
 

 “It is well to add that a judge cannot compel a defendant, against his will, to plead not guilty and submit to a trial, for undoubtedly a prisoner of competent understanding, duly enlightened, has the right to plead guilty instead of denying the charge, yet, in proportion to the gravity of the offense, the court should exercise caution in receiving this plea, and should see that he is
 
 *679
 
 properly advised as to the nature of his act and its consequences. This is a matter which is left to the good judgment and discretion of the court, which should be exercised so as to protect a defendant from an improvident plea and to prevent injustice. 1 Bishop’s New 'Or. Procedure, Section 795.”
 

 In capital cases we think the discretion is certainly vested in the trial judge whether or not he will accept a plea of guilty. Such a plea should be accepted cautiously, and not until the court has advised the accused of his rights in the premises, and been satisfied that the accused has acted freely and deliberately after being so admonished, and that he does so with full knowledge and appreciation and understanding of the nature and consequences of such plea of guilty.
 

 An examination of this record discloses that, upon the tender of the plea of guilty, the court inquired of his counsel as to whether or not he had talked to the accused, and whether the accused understood the nature of the charge and the responsibility of a plea of that kind, and that by so doing he would place in the hands of the court the duty to determine the degree of the crime; and further the court required the interpreter, the defendant not being able to speak English, to tell the defendant that his lawyer in open court confessed his guilt to homicide, as charged in the indictment, and told the interpreter to ask the accused if that was his confession, and if he stood by that confession made by his attorney in open court, and if it was his confession, to which the accused replied, through the interpreter, that he
 
 *680
 
 did so understand; and the court further asked the accused, through the interpreter, whether he fully-realized the punishment that would be carried into effect after an open confession in open court of homicide, and again the accused replied, through the interpreter, that he was satisfied; and the trial judge, pursuing the inquiry further, asked the interpreter to inquire of the accused whether he understood that the case would be taken from the jury and the court determine what the punishment was to be, and the accused replied that he was satisfied with what the court did. The court inquired further as to whether he fully realized what he. was doing, and the accused replied that he did.
 

 We think that the trial judge fully appreciated the great responsibility that rested upon him, and that he exercised proper care to fully advise the defendant of his rights in the premises, the nature and consequences of his plea of guilty.
 

 The accused was defended by two attorneys of the Cuyahoga county bar in good standing, and we are led to the conclusion that this plea was entered by the accused and his counsel with full knowledge, appreciation, and understanding of the nature and consequences of the plea of guilty.
 

 The motives for changing the plea to guilty, after the introduction of all the evidence and at the conclusion of the opening argument by the state, may have been the hope that the degree of crime and penalty fixed therefor would be less if fixed by the court than by the jury, but the fact that such belief proved to be unfounded is no ground for finding that there was an abuse of
 
 *681
 
 discretion on the part of the trial judge when all the evidence in the case would have supported such a finding had it been returned by a jury. The evidence in this case is sufficient to support a verdict of murder in the first degree, with no recommendation for mercy.
 

 It is suggested in argument that too short a period of time elapsed from the time the jury were asked to retire when the plea of not guilty was withdrawn and the plea of guilty entered. The preliminary steps looking to that end had taken place between the court and counsel, we are advised by the bill of exceptions, before the jury retired. Now the trial had been in progress from Monday, November 5, to Monday, November 12, excluding Saturday and Sunday, making '6 trial days. The trial judge was undoubtedly thoroughly familiar with every phase of the case from the evidence received upon both sides, and, even though the record shows that the return of the jury was 5 minutes after being excused, the conclusions of the trial judge may well have been reached in so short a period, after having had opportunity for 6 days of consideration of the various phases of the case.
 

 Much was said in argument concerning the refusal of the trial judge to longer delay the trial by reason of the absence of a witness, a doctor, who it was said would testify concerning hypothetical questions proposed to be put to him concerning the effect of a blow on the head, as bearing upon the question of the ability of the accused to form an intent and purpose to kill.
 

 Now it is the claim of the defendant that he
 
 *682
 
 surprised Mrs. Ferritto in the act of taking wine from a barrel belonging to him and putting it into a bottle, and that, in the altercation that followed, Mrs. Ferritto struck him with a bottle, and that after that he does not remember what took place. Mrs. Ferritto denies all of this and testifies:
 

 “He swore to the Virgin Mary like ‘God damn, I have something I want to tell you.’ Then he said he wanted to take my honor, and then I pushed him back, and he knocked me down. * * *
 

 “Q. What did you do after he wanted to stay with you? A. While he was grabbing me to throw me on the ground I was pushing him, and he threw me down.
 

 “Qi. Tell us from there on everything that .happened in your home that morning? A. After he threw me down, then he took a knife and killed [stabbed] me, and the way he did to me he did to the child.
 

 “Q. What did he do to you, after he threw you down on the floor* with the knife? A. I was dead [insensible]; I don’t know. * * *
 

 “Q. What did you see in his hands, if you saw anything? A. All I know is that he took the knife out and came near me and began to hit.
 

 “Q. Where did he hit you with the knife, if he hit you any" place? A. Around the head, on the shoulders, and all over.
 

 “Q. Will you step down and show the jury if there are any marks in the places where you were struck with the knife? [Witness indicates on her body.]”
 

 The state claims that the ability of the defendant
 
 *683
 
 to think clearly is evidenced by his attempt to kill the remaining members of the family, in addition to Mrs. Ferritto and Ernest, to-wit, Dominic and Tony, so that no one would be left who could testify as to what took place; his¡ flight and threats against his pursuer, Paul Polatino, indicate a mind capable of appreciating the nature of his act and his purpose to kill any one who stood in the way of his escape.
 

 If the defendant had some witness who would express an opinion favorable to the accused upon the state of facts disclosed by this record, the state of Ohio afforded opportunity for the production of such witness by compulsory process. The defendant did not see fit to avail himself thereof. The trial had been going <on from November 5 to November 12, with an adjournment from Friday afternoon to Monday morning. The court, upon being notified the defendant expected to call a doctor as a witness, admonished counsel that he should be in attendance. Another witness was called, and at the conclusion of his testimony a second request for delay was made, the court reminding counsel of the time that the trial had been in progress, and that no attempt had been made to secure the attendance of the witness by law, and that the court could not aid by issuing a capias, having no jurisdiction over the witness, that the delay from Friday to Monday was ample to arrange for the attendance of the witness, and for all these reasons declined longer to delay the trial.
 

 Was there an abuse of discretion in so doing? From the nature of court procedure much latitude
 
 *684
 
 must be given the trial judge in the conduct of the cause before him. Unless that discretion appears to have been abused, it should not be disturbed. In this instance it is apparent that reasonable diligence could have secured the attendance of any witness the defendant desired, and we cannot say that there was an abuse of discretion by the court in refusing to longer delay the trial.
 

 After the plea of guilty was entered, no offer of evidence appears of record, nor does the record disclose that the witness in question ever did appear. While the plea of guilty was entered on Monday, and the deg'ree of crime determined with no recommendation of mercy, sentence, it was announced by the trial judge, would not be imposed until the following Saturday. Nothing appears of record that any attempt was made in any way to bring to the attention of the court, by motion or otherwise, anything that would assist the court in further consideration of the matter.
 

 From a careful reading of the record presented, and a full consideration thereof, this court is unable to affirmatively find that there was an abuse of discretion on the part of the trial judge in receiving the plea of guilty in the manner in which it was done.
 

 This brings us to the second inquiry — whether there was an abuse of discretion in finding the defendant guilty of murder in the first degree without hearing the testimony anew after the plea of guilty was entered.
 

 It has been settled ini this state that, upon a
 
 *685
 
 plea of guilty under an indictment for murder in the first degree, a judge may hear evidence and determine, without the intervention of a jury, the degree of the crime and decline to extend mercy, fixing the punishment by death.
 
 Craig
 
 v.
 
 State,
 
 49 Ohio St., 415, 30 N. E., 1120, 16 L. R. A., 358;
 
 Conrad
 
 v.
 
 State,
 
 75 Ohio St., 52, 78 N. E., 957, 6 L. R. A., (N. S.), 1154, 8 Ann. Cas., 966;
 
 State
 
 v.
 
 Habig,
 
 106 Ohio St., 151, 140 N. E., 195.
 

 The accused had the option to submit to the determination, either of the jury or the court. He chose the latter, after being fully advised as to his rights. On a plea of guilty thus entered, the accused was in the same situation he would have been had the jury found him guilty. In the latter event, the jury would have proceeded to consider the evidence adduced at the trial and reach a determination whether it would recommend mercy or not.
 
 Howell
 
 v.
 
 State,
 
 102 Ohio St., 411, 131 N. E., 706, 17 A. L. R., 1108. After the plea of guilty, why may not the trial judge do the same thing as the jury would have done, to wit, consider the same evidence that the jury would have considered and reach his conclusion in like manner?
 

 The trial judge had heard all the evidence pertaining to the homicide under investigation. Not only had the evidence for the state been given, but the evidence on behalf of the accused, including the testimony of the defendant himself.
 

 It is said in the case of
 
 State
 
 v.
 
 Habig, supra,
 
 on page 166 of the opinion (140 N. E., 199), by Marshall, C. J.:
 

 
 *686
 
 “The accused has confessed his guilt of homicide, thereby waiving the determination of a jury upon that question, but has not waived all consideration of the question of mercy. No legislative provision having been made for impaneling a jury after a confession of guilt in open court, it must be held that the Legislature intended that
 
 all functions of the jury that could be exercised in defendant’s behalf might lawfully be exercised by the court.”
 

 Therefore, if the function of extending mercy to the accused might have been exercised by the jury upon the evidence adduced in the case before it, the conclusion would necessarily follow that the like function devolving upon the court could be discharged by considering the
 
 same
 
 evidence which the jury would have considered.
 

 We are therefore of opinion that under the circumstances disclosed by this record there was no abuse of discretion by the court proceeding in the manner that he did without hearing. all over again the evidence as to the facts and circumstances of the homicide in order to determine the question of extending mercy to the accused; said evidence being fresh in his mind after a 6-day trial.
 

 Further, no affirmative profert of evidence appears in the record in any way, by motion or otherwise, after the plea of guilty was entered.
 

 The accused had a right to a fair trial, by the law of the land, and his legal rights should be protected in every degree; but, having received such protection, it was equally the duty of the
 
 *687
 
 trial judge, being conversant with the entire matter and having heard the evidence touching the circumstances of the homicide, to pronounce a judgment which should mete out even-handed justice, not only for the accused, but also for the protection of the state of Ohio.
 

 Finding no abuse of discretion nor other error apparent on the face of the record, it becomes our duty to reverse the judgment of the Court of Appeals and affirm the judgment of the court of common pleas.
 

 Judgment of the Court of Appeals reversed, amd, that of common pleas affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen and Kinkade, JJ., concur.