OPINION
{¶ 1} Anthony D. Hernton appeals from the judgment of the Lake County Court of Common Pleas, sentencing him to a term of six years imprisonment for burglary. Finding that the trial court was within its discretion in so sentencing Mr. Hernton, we affirm.
 {¶ 2} This case stems from an incident occurring on or about November 22, 2007. Approximately six months before, Mr. Hernton was released from prison, after serving twenty-four years for receiving stolen property, two counts of armed robbery, *Page 2 
two counts of attempted aggravated murder with gun specifications, and aggravated arson. Mr. Hernton was sixty at the time of his release. Mr. Hernton received a small inheritance about the time of his release; and obtained a job as custodian for Unity Lutheran Church in Cleveland, Ohio, where he was popular with the pastor and congregation.
 {¶ 3} Mr. Hernton began dating Ayanna Gardner, then aged about thirty-one years. He provided her considerable support, and helped her get an apartment in Painesville, Ohio, for herself and her three children. On November 22, 2007, Mr. Hernton called Ms. Gardner at this apartment, expecting to be invited over for Thanksgiving dinner. Getting no answer, he went to Ms. Gardner's apartment. He knocked, and heard some indistinct speech over the sound of the television. The door being unlocked, he entered, and found Ms. Gardner with her friend, Barbara Rees. Words were exchanged; and, eventually, Mr. Hernton struck Ms. Gardner in the face. He disputed whether he also struck Ms. Rees, claiming that she tripped and fell, causing a small cut to her head. Mr. Hernton left the apartment.
 {¶ 4} There was frequent contact over the next week or so between Mr. Hernton and Ms. Gardner. He apologized for striking her, and gave her his car. After dining with her the evening of December 2, 2007, Mr. Hernton turned himself in to Painesville police. The following day, he was released on bond.
 {¶ 5} On or about May 22, 2008, Mr. Hernton was charged by way of information with burglary, in violation of R.C. 2911.12(A)(1), a second-degree felony. Evidently, he was charged in a separate case with menacing, assault, and/or felonious assault, also stemming from the Thanksgiving incident. May 30, 2008, Mr. Hernton *Page 3 
appeared in the trial court; waived his right to an indictment by the grand jury; and, pleaded guilty to burglary. The state moved the trial court to nolle prosequi the other charges against Mr. Hernton. The trial court proceeded to sentencing that day, imposing a six year term of imprisonment upon Mr. Hernton. This judgment was embodied in an entry filed June 3, 2008. An amended judgment entry of sentence was filed June 13, 2008.
 {¶ 6} July 1, 2008, Mr. Hernton noticed this appeal, assigning a single error:
 {¶ 7} "THE TRIAL COURT'S DECISION TO SENTENCE APPELLANT TO SIX (6) YEARS IN PRISON IS CONTRARY TO LAW AS IT FAILS TO CONSIDER THE OVERALL PURPOSES OF FELONY SENTENCES PURSUANT TO O.R.C. SECTIONS 2929.11 AND2929.12. * * *"
 {¶ 8} This court will review a felony sentence pursuant to the two-prong standard set forth by the Supreme Court of Ohio in State v.Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912.[1] The plurality preliminarily noted that "[s]ince Foster, the courts of appeals have adopted varied standards for reviewing trial court sentencing decisions, ranging from abuse of discretion * * * to a standard that considers whether the sentence is clearly contrary to law. State v. Burton, 10th Dist. No. 06AP-690, 2007-Ohio-1941." Id. at ¶ 3. The plurality held that "[i]n applying Foster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to *Page 4 
determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶ 4.
 {¶ 9} In its analysis, the plurality in Kalish indicated the following at ¶ 9-17:
 {¶ 10} "Prior to Foster, there was no doubt regarding the appropriate standard for reviewing felony sentences. Under the applicable statute, appellate courts were to `review the record, including the findings underlying the sentence or modification given by the sentencing court. (* * *) The appellate court's standard for review (was) not whether the sentencing court abused its discretion.' R.C. 2953.08(G)(2).
 {¶ 11} "The statute further authorized a court of appeals to `take any action (* * *) if it clearly and convincingly finds either of the following: (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant; (b) That the sentence is otherwise contrary to law.' Former R.C. 2953.08(G)(2), 2004 Am. Sub. H.B. No. 473, 150 Ohio Laws, Part IV, 5814.
 {¶ 12} "The obvious problem with the statute as written and its relation to Foster is the references to `the findings underlying the sentence' and to the determination `(t)hat the record does not support the sentencing court's findings.' Foster's result was to sever the portions of the statute that required judicial fact-finding to warrant a sentence beyond the minimum term in order to make Ohio's sentencing scheme compatible with the United States Supreme Court's decisions inBlakely v. Washington (2004), 542 U.S. 296 * * *, and United States v.Booker (2005), 543 U.S. 220 * * *. Therefore, trial courts `have fulldiscretion to impose a prison sentence within the *Page 5 
statutory range and are no longer required to make findings or givetheir reasons for imposing maximum, consecutive, or more than the minimum sentences.' (Emphasis added.) Foster, 109 Ohio St.3d 1,2006-Ohio-856 * * *, ¶ 100.
 {¶ 13} "As the passage cited above clearly indicates, Foster does not require a trial court to provide any reasons in imposing its sentence. For example, when imposing consecutive sentences prior toFoster, the trial court had to find that the sentence was necessary to protect the public and was not disproportionate to the seriousness of the offense and the danger the defendant posed to the public. R.C. 2929.14(E)(4). After Foster, a trial court can simply impose consecutive sentences, and no reason need be stated. Thus, a record afterFoster may be silent as to the judicial findings that appellate courts were originally meant to review under R.C. 2953.08(G)(2).
 {¶ 14} "Although Foster eliminated mandatory judicial fact-finding for upward departures from the minimum, it left intact R.C. 2929.11 and2929.12. The trial court must still consider these statutes. State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855 * * *, ¶ 38. `In addition, the sentencing court must be guided by statutes that are specific to the case itself.' Id. Furthermore, the trial court must still be mindful of imposing the correct term of postrelease control.
 {¶ 15} "Thus, despite the fact that R.C. 2953.08(G)(2) refers to the excised judicial-fact-finding portions of the sentencing scheme, an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence. Instead, the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal *Page 6 
question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G).
 {¶ 16} "If on appeal the trial court's sentence is, for example, outside the permissible statutory range, the sentence is clearly and convincingly contrary to law, and the appellate court's review is at an end. The sentence cannot stand. However, if the trial court's sentence is not contrary to law, what is the effect of R.C. 2929.11 and 2929.12
and their relevance to R.C. 2953.08(G)(2) and Foster[.]
 {¶ 17} "Because Foster now gives judges full discretion to impose a sentence within the statutory range without having to `navigate a series of criteria that dictate the sentence,' State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642 * * *, ¶ 25, the state's position that an abuse-of-discretion standard must be used is understandable. Although R.C. 2953.08 did not allow appellate courts to use the abuse-of-discretion standard of review, the statute prior toFoster was concerned with review of the trial court's factual findings under the now excised portions of the statute.
 {¶ 18} "R.C. 2929.11 and 2929.12, however, are not fact-finding statutes like R.C. 2929.14. * * * Instead, they serve as an overarching guide for [a] trial judge to consider in fashioning an appropriate sentence. In considering these statutes in light of Foster, the trial court has full discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. * * * Moreover, R.C. 2929.12 explicitly permits trial courts to exercise their discretion in considering whether its sentence complies with the purposes of sentencing. It naturally follows, then, to review the actual term of imprisonment for an abuse of discretion. Cf. State v.Stroud, 7th Dist. No. 07 MA 91, 2008-Ohio-3187, ¶ 63 (Donofrio, J., concurring in judgment). Therefore, *Page 7 
assuming the trial court has complied with the applicable rules and statutes, the exercise of its discretion in selecting a sentence within the permissible statutory range is subject to review for abuse of discretion pursuant to Foster." (Footnotes and parallel citations omitted.)
 {¶ 19} While couched as a challenge as to whether his sentence is contrary to law, Mr. Hernton actually argues that the trial court misapplied the seriousness and recidivism factors set forth at R.C. 2929.12. Further, it is apparent from the faces of the judgment entries of sentence that the trial court applied all the correct statutes in arriving at Mr. Hernton's sentence, and that six years imprisonment is within the statutory range for second degree felonies. Consequently, the sentence is not "clearly contrary to law," under the first prong ofKalish.
 {¶ 20} Therefore, we proceed to consider whether the trial court abused its discretion in applying the seriousness and recidivism factors. An abuse of discretion is no mere error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g.,State v. Ferranto (1925), 112 Ohio St. 667, 676-678.
 {¶ 21} Mr. Hernton disputes whether his conduct presented any factors making his conduct "more serious than conduct normally constituting the offense[.]" R.C. 2929.12(B). He notes that Ms. Gardner's injuries were not very serious or long lasting, and that she largely failed to cooperate in the preparation of the case. Thus, he *Page 8 
questions whether she suffered "serious physical, psychological, or economic harm[,]" due to his conduct. R.C. 2929.12(B)(2).
 {¶ 22} We agree that there appears to be little that makes his conduct more serious than that which normally constitutes second degree felony burglary. However, we must note the fact that the romantic relationship between Mr. Hernton and Ms. Gardner did facilitate — cause — the conduct. R.C. 2929.12(B)(6).
 {¶ 23} R.C. 2929.12(C) sets forth four factors making conduct less serious than conduct normally constituting the offense. These include whether the "victim induced or facilitated the offense," R.C. 2929.12(C)(1); whether the "offender acted under strong provocation[,]" R.C. 2929.12(C)(2); whether the "offender did not cause or expect to cause physical harm to any person or property[,]" R.C. 2929.12(C)(3); and, whether there "are substantial grounds to mitigate the offender's conduct," R.C. 2929.12(C)(4). Mr. Hernton argues that all of these factors weigh in his favor. He contends had fallen under the sway of Ms. Gardner, who had accepted monetary favors from him, but who did not answer the door of the apartment he had found for her when he knocked. He contends that these facts show that Ms. Gardner facilitated the offense; that he acted under provocation; and, that these are mitigating factors. He further notes he did not intend to strike Ms. Gardner, but did so on the spur of the moment.
 {¶ 24} We are completely unpersuaded that any of this, even if true, justifies striking her. Such violence is never permissible. Further, we note that even if Mr. Hernton did not go to the apartment with the idea of striking Ms. Gardner, when he punched her, he must have expected to cause her physical harm. While the intent may have arisen in an instant, the natural intent in punching another is to cause harm. *Page 9 
 {¶ 25} Mr. Hernton also points to R.C. 2929.12(E)(4), which indicates recidivism is to be considered less likely when, "[t]he offense was committed under circumstances not likely to recur." He contends that it is unlikely he will again be in such a relationship as he was with Ms. Gardner.
 {¶ 26} Finally, Mr. Hernton notes his generally good adjustment to society following his many years in prison. He neither smoked, nor drank, nor took drugs while free. He got a job at the Unity Lutheran Church: the pastor testified in his support.
 {¶ 27} However, we note what the trial court stated on the record at Mr. Hernton's sentencing hearing, and must agree with what the learned trial judge stated regarding those factors tending to show recidivism is more likely, pursuant to R.C. 2929.12(D). Thus, the trial court placed great emphasis on Mr. Hernton's extensive criminal past. This indicates a propensity to recidivism pursuant to R.C. 2929.12(D)(2). The trial court further commented on the fact that this offense was committed while Mr. Hernton was under post release control, which is a recidivism factor pursuant to R.C. 2929.12(D)(1).
 {¶ 28} The trial court accepted that Mr. Hernton was genuinely remorseful. It did not give him the longest sentence it could have imposed. Under the circumstances, we cannot find the trial court abused its discretion in sentencing Mr. Hernton.
 {¶ 29} The assignment of error lacks merit.
 {¶ 30} The judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J., concurs in judgment only,
CYNTHIA WESTCOTT RICE, J., concurs in judgment only with Concurring Opinion.
[1] We note that Kalish, an appeal from this court, State v.Kalish, 11th Dist. No. 2006-L-093, 2007-Ohio-3850 (O'Toole, J., concurring in part, dissenting in part) is a plurality opinion. Therefore, it is merely persuasive. See State v. Bassett, 8th Dist. No. 90887, 2008-Ohio-5597, at ¶ 24, fn. 2. Although the plurality indicated that this court did not review the sentence to ensure that the trial court clearly and convincingly complied with the pertinent laws, it nevertheless affirmed this court's judgment, albeit on different grounds. *Page 10