[Cite as *In re O.M.R.*, 2014-Ohio-4739.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| O.M.R. | | |
| | : | |
| | | **CASE NO. 2013-T-0057** |

Appeal from the Trumbull County Court of Common Pleas, Juvenile Division, Case No. 2006 JP 855.

Judgment: Affirmed.

*Christopher A. Maruca*, The Maruca Law Firm, LLC, 201 E. Commerce Street, Suite #316, Youngstown, OH 44503 (For Appellant, Carrie A. Roscoe).

*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483-5805 (For Appellee, Eddie May).

*Michael Georgiadis*, 135 Pine Avenue, S.E., Suite #211, Warren, OH 44481 (Guardian ad litem).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the Trumbull County Court of Common Pleas, Juvenile Division. This matter came to the court upon appellee Eddie May's motion to terminate a shared parenting plan with appellant Carrie Roscoe. The trial court adopted the magistrate's ruling that the shared parenting plan would remain in effect, and the naming of May as the residential parent for school purposes. Roscoe appeals that decision, claiming that the magistrate's determination that May should be the

residential parent for school purposes was against the manifest weight of the evidence. For the following reasons, we affirm.

{¶2} This litigation originally arose in 2006 when a paternity claim was filed to establish May as the father of O.M.R. After a lengthy amount of litigation, Roscoe and May entered into a shared parenting plan in February 2011. At that time, no parent was designated the residential parent for school purposes. Shortly thereafter, May moved to terminate the shared parenting plan and sought immediate custody of O.M.R. with only supervised visitation for Roscoe. Roscoe in turn filed her own motion to terminate the shared parenting plan and sought to be named the residential parent.

{¶3} In late 2012, a hearing was held on the motions to terminate the shared parenting plan, and to determine who should be the residential parent for school purposes. The magistrate ultimately decided to keep the shared parenting and designated May as the residential parent for school purposes only. The trial court overruled the parties' objections to the magistrate's decision. This appeal followed.

{¶4} As Roscoe's assignments of error both concern the same subject matter, we consolidate them in our review. As her two assignments of error, Roscoe alleges that:

{¶5} "[1.] The magistrate's judgment is against the manifest weight of the evidence.

{¶6} "[2.] The judge abused her discretion in adopting the judgment of the magistrate in the face of the weight of the evidence presented at trial."

{¶7} We review decisions allocating parental responsibilities and rights for an abuse of discretion. *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994).

**{¶8}** "As this court recently stated, the term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, 3 Ohio Law Abs. 187, 3 Ohio Law Abs. 332, 148 N.E. 362 * * * (1925). The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. * * * [W]hen an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.' *Id.* ¶67." (quotation omitted) *McLeod v. McLeod*, 11th Dist. Ashtabula No. 2012-A-0030, 2013-Ohio-4546, ¶11.

**{¶9}** R.C. 3109.04(E)(2)(b) controls modifications of a shared parenting plan that change or designate a residential parent for school purposes. *In re Jacobberger*, 11th Dist. Geauga No. 2003-G-2538, 2004-Ohio-6937, ¶¶37-38. This is because such a designation "does not affect the legal rights of either parent nor does it involve a reallocation of parental rights." *Porter v. Porter*, 9th Dist. Summit No. 21040, 2002-Ohio-6038, ¶8. R.C. 3109.04(E)(2)(b) provides that:

3

{¶10} "The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children."

{¶11} R.C. 3109.04(F)(1) sets forth factors governing the allocation of parental rights and responsibilities, and states that, in determining the best interest of a child, the court shall consider all "relevant factors," including, but not limited to: (a) the wishes of the child's parents; (b) if the court has interviewed the child in chambers regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child; (c) the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to his home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments, including all arrearages, that are required; (h) whether either parent previously has been convicted of or pleaded guilty to any criminal offense; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in

accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶12}** Roscoe alleges that she should have been designated the residential parent for school purposes because she offered extensive evidence about Bascom Elementary, Roscoe's preferred school for O.M.R., and May offered little evidence about the quality of the education at St. Stephen's, May's preferred school for O.M.R.

**{¶13}** Judy Bedio, O.M.R.'s pre-K teacher at St. Stephen's, testified that she preferred classes with a small number of children (around nine students) as it allowed individualized attention. She also testified that O.M.R. would possibly know some students from her pre-K class if she were to continue her education at St. Stephen's. May claimed he wanted O.M.R. to attend St. Stephen's because his daughter was hyperactive and needed more individualized attention. He also indicated that he preferred that his daughter know some individuals that she previously went to school with from the St. Stephen's program. May conceded that O.M.R. would not be able to attend St. Stephen's without the continued financial support of his parents.

**{¶14}** Molly Schwab, a kindergarten teacher at Boscom Elementary, testified about the quality of Bosom Elementary and the Labrae school system. Specifically, Schwab noted that the school system was consistently above average in state standardized-testing, and that the school system had been consistently reviewed as an "effective," the second-highest category in the state. Schwab furthered that she thought that a class size of 15 would be the most effective for teaching kindergarten as the slightly larger class size allowed the students to participate in more activities with a

variety of people. Roscoe testified that she preferred her child to go to Boscom because she believed Schwab was an excellent teacher.

{¶15} Based on the foregoing, we conclude there was not an abuse of discretion. There is conflicting testimony as to whether a "medium" or "small" class-size is a benefit or detriment to someone O.M.R.'s age. May's testimony that he believes his daughter needs individualized attention was also a factor the magistrate could have credited. Given the deference we must afford the fact-finder on issues of credibility, we must conclude that Roscoe's witnesses were found to be incredible or less persuasive on what would be in the best interest of O.M.R.

{¶16} Accordingly, the first and second assignments of error are without merit and the trial court's judgment is affirmed.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

6