[Cite as *State v. Massey*, 2017-Ohio-706.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2016-L-030 |
| GARY D. MASSEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2014 CR 000344.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Gary D. Massey appeals from the judgment entry of the Lake County Court of Common Pleas, denying his post sentence motion to withdraw a guilty plea in a murder case. Finding no error, we affirm.

{¶2} The following facts are taken from the DVD of Mr. Massey's interrogation by the Eastlake Police Department, May 5, 2014.

{¶3} May 5, 2014, Mr. Massey was going to see his psychiatrist, Dr. Neil Steinberg. Mr. Massey suffers from bipolar disorder and depression, for which he takes Zoloft, Seroquel, and Lithium. He needed to refill his prescriptions. He contacted his friend, Timothy Martz, to go with him.[1] The men got lost and returned to Mr. Martz' house in Eastlake, where they began drinking and using illicit drugs. Nobody else was present. This was about 10:00 a.m. About 11:00 a.m., the men got into an argument about going to see a mutual friend, "Billy," with whom Mr. Massey had an argument several months before. Mr. Martz rushed Mr. Massey, and began hitting him. Mr. Massey pulled a switch blade from his pocket, and stabbed Mr. Martz in or near the neck. Mr. Martz fell down, and Mr. Massey stomped on his neck several times. Mr. Massey noticed blood coming from Mr. Martz' mouth, and checked him for a pulse, finding none. Mr. Massey washed his hands, and left.

{¶4} The DVD of the interrogation reveals that Mr. Massey had a good recall of the events resulting in Mr. Martz' death, but was otherwise confused. The interrogation commenced about 4:00 p.m., and Mr. Massey had already been booked. However, he had absolutely no recollection of what he did in the intervening hours. He knew he had told his wife what had happened, but did not know when or how. The officers' questions indicate Mrs. Massey drove him to the police station – but Mr. Massey did not know how he had arrived.

{¶5} May 6, 2014, a complaint and summons charging Mr. Massey with murder in violation of R.C. 2903.02(A) was filed in the Willoughby Municipal Court. That same day, he entered a written plea of not guilty. Discovery practice ensued. August 1, 2014,

---

1. There is a discrepancy in the record as to whether the proper spelling is "Martz" or "Marks." We use the spelling found in the indictment.

the Lake County Grand Jury returned an indictment charging Mr. Massey with murder in violation of R.C. 2903.02(B), an unclassified felony. August 13, 2014, a change of plea hearing was held, and Mr. Massey entered a written plea of guilty. The trial court advanced immediately to sentencing, imposing a term of imprisonment of 15 years to life.

{¶6} February 4, 2016, Mr. Massey moved the trial court to withdraw his guilty plea, essentially arguing ineffective assistance of counsel, and that he had been incompetent at the time of the plea. By a judgment entry filed March 7, 2016, the trial court denied the motion to withdraw. This appeal timely ensued, Mr. Massey assigning a single error: "The trial court erred and abused its discretion by denying the appellant's motion to withdraw his guilty plea."

{¶7} "We review a trial court's decision to grant or deny a post sentence motion to withdraw a guilty plea pursuant to Crim.R. 32.1 for abuse of discretion. *State v. Wilkey*, 5th Dist. Muskingum No. CT2005-0050, 2006-Ohio-3276, ¶21. Regarding this standard, we recall the term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678, * * * (1925). An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶8} "In *State v. Derricoatte*, 11th Dist. Ashtabula No. 2012-A-0038, 2013-Ohio-3774, ¶18, we stated:

{¶9} "'This court has defined the term "manifest injustice" as a "clear or openly

3

unjust act." *State v. Wilfong*, 11th Dist. Lake No. 2010-L-074, 2011 Ohio 6512, ¶12. Pursuant to this standard, extraordinary circumstances must exist before the granting of a post-sentencing motion to withdraw can be justified. *Id.* "The rationale for this high standard is 'to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence is unexpectedly severe.'" (*State v.*) *Robinson*, (11th Dist. Lake No. 2011-L-145,)2012 Ohio 5824, at ¶14, quoting *State v. Caraballo*, 17 Ohio St.3d 66, 67, (* * *) (1985*).*'" (Parallel citations omitted.) *State v. Banks*, 11th Dist Lake No. 2015-L-128, 2016-Ohio-4925, ¶7-9.

**{¶10}** Mr. Massey presents five issues for review:

**{¶11}** "Whether a trial court errs and abuses its discretion by denying a post-sentencing motion to withdraw a guilty plea, where the record reveals: (1) at time of the plea, the criminal defendant had no recollection whatsoever of the crime; (2) after years of medication and therapy, the defendant regains his memory and realizes that it was the victim that initiated the fight between the defendant and the victim by attacking the defendant; (3) the defendant had been rushed in making his decision to enter the guilty plea; (4) the defendant had been told by his trial attorney that the prosecutor would seek a heavier penalty if the defendant did not enter a guilty plea; and (5) in fact, the only penalty confronting the defendant under the indictment was the penalty which he received."

**{¶12}** We deal with these issues out of order.

**{¶13}** For his third issue, Mr. Massey asserts he was rushed by trial counsel into entering a plea deal. We respectfully find no support for this in the record. The complaint and summons issued against him May 6, 2014, and the indictment was

4

returned August 1, 2014. Discovery practice had been occurring between the parties since June 13, 2014. The plea of guilty was entered August 13, 2014. The trial court carefully examined Mr. Massey as to whether he was satisfied with his counsel's representation, and he said he was. The trial court specifically asked whether Mr. Massey had sufficient time to discuss the case with his counsel. He replied he did. His trial counsel displayed a full knowledge of the case and evidence while arguing in mitigation. The third issue lacks merit.

{¶14} For his fourth issue, Mr. Massey asserts trial counsel told him the state would seek a term of imprisonment of 30 years to life if he did not plead guilty prior to the issuance of the indictment. For his fifth issue, he observes that the only sentence he could have received was that meted out – 15 years to life imprisonment. Being interrelated, we consider these issues together.

{¶15} Again, the record does not support Mr. Massey's assertions. His change of plea took place 12 days after the indictment issued. And the trial court observed in its judgment entry denying the motion to withdraw that the state never suggested to the court it sought any sentence other than that required by law, which is what the trial court imposed. Further, in the colloquy before accepting Mr. Massey's change of plea, the trial court specifically asked him whether he understood he would be sentenced to 15 years to life imprisonment, and Mr. Massey replied he did. This indicates he was fully aware of the sentence he was to receive. The fourth and fifth issues lack merit.

{¶16} By his first and second issues, Mr. Massey asserts, essentially, that he was not in a fit state to enter his plea of guilty, since he could not recollect the events leading to Mr. Martz' death at the time of the change of plea. Two portions of the

5

change of plea hearing and sentencing hearing are relevant.  Each exchange occurred prior to the change of plea. The first concerns Mr. Massey's mental clarity at the time of hearing.

{¶17} The trial court: "Are you currently under the influence of any drugs, alcohol, or medication of any kind?"

{¶18}  Mr. Massey: "No.  Just my normal meds."

{¶19}  The trial court: "And what are those?"

{¶20}  Mr. Massey: "It's Zoloft, Seroquel, and Lithium."

{¶21}  The trial court: "What was the third one?"

{¶22}  Mr. Massey: "Lithium."

{¶23}  The trial court: "And when did you last have these drugs?"

{¶24}  Mr. Massey: "Last night."

{¶25}  The trial court: "Is that the only drugs, alcohol, or medication you've had in the last 48 hours?"

{¶26}  Mr. Massey: "Yes."

{¶27}  The trial court: And so that's Zoloft, Seroquel, and Lithium.  Do any of these drugs adversely affect your ability to think clearly?"

{¶28}  Mr. Masse: "No."

{¶29}  The trial court: "Do they assist you in thinking clearly?"

{¶30}  Mr. Massey: "Yes."

{¶31}  The trial court: "You're thinking clearly now?"

{¶32}  Mr. Massey: "Yes."

{¶33}  The trial court: "No trouble understanding what I've said so far?"

{¶34} Mr. Massey: "No."

{¶35} The trial court: "No trouble understanding what you and your attorney talked about before we started the hearing?"

{¶36} Mr. Massey: "No."

{¶37} The second exchange occurred immediately prior to Mr. Massey being handed the written plea of guilty.

{¶38} The trial court: "Tell me what you did here."

{¶39} Mr. Massey: "Well, we got in a fight. I don't remember exactly everything. I don't remember much from drinking. You know. I just read the autopsy, and that's what it says, so * * *[.]"

{¶40} The trial court: "Well, do you remember what you did?"

{¶41} Mr. Massey: "No, I don't remember."

{¶42} The trial court: "Was anybody else there but you and Mr. Marks (sic)?"

{¶43} Mr. Massey: "No."

{¶44} The trial court: "And do you know how you killed him?"

{¶45} Mr. Massey: "I imagine by my feet. You know."

{¶46} The foregoing exchanges reveal that Mr. Massey was in a clear state of mind when he entered his plea, but that he had difficulty recollecting the events resulting in Mr. Martz' death. We do not believe this is sufficient to constitute a "manifest injustice" requiring reversal of the trial court's judgment. While Mr. Massey may have become unclear regarding the events resulting in Mr. Martz' death by the time of the plea hearing, August 13, 2014, he gave a full and detailed description of them to the interrogating officers at the time of his confession.

{¶47} Mr. Massey argued in his motion to withdraw that after psychiatric treatment in prison, he now knows the events resulting in Mr. Martz' death were an accident. This is not supported by the record. During his interrogation, the officers asked why he stomped on Mr. Martz' neck. Mr. Massey replied that, even having stabbed Mr. Martz, he remained scared of him, and wanted to make certain Mr. Martz could not hurt him. This is intent, pure and simple.

{¶48} Mr. Massey cites to us the opinion in *State v. Bennett*, 5th Dist. Stark No. 2004CA00369, 2006-Ohio-5632, in which the Fifth District reversed the judgment of the trial court, denying appellant's post sentence motion to withdraw his guilty plea, as support for the proposition that an appellant's lack of recall regarding the events constituting a crime can invalidate a guilty plea.

{¶49} We find *Bennett* distinguishable. In that case, Bennett and another man were travelling in a van which ran off the road and struck a third man. *Id.* at ¶2. The other man in the van died. *Id.* Bennett pleaded guilty to aggravated vehicular homicide, aggravated vehicular assault, OVI, and driving under suspension. *Id.* at ¶2, 4. Eventually, Bennett moved to withdraw his guilty plea and for postconviction relief. *Id.* at ¶5-6. After hearing, the trial court denied the motions. *Id.* at ¶7.

{¶50} On appeal, the Fifth District reversed. It noted that Bennett had constantly told authorities that he had no recollection of the accident; that the first person to arrive at the scene found Bennett unconscious and falling out of the passenger side window of the van; that an accident reconstructionist testified that damage to the passenger side window shield of the van corresponded to Bennett's head injury; and, that Bennett's hair and DNA were found on the passenger side dashboard of the van. *Bennett* at ¶23, 36-

8

37, 39, 50-53. Under the circumstances, the Fifth District found the trial court abused its discretion in denying the motion to withdraw, since evidence showed he may have been the passenger, not the driver, of the van. *Id.* at ¶58-59.

{¶51} Thus, in *Bennett*, substantial evidence indicated appellant might not be responsible for the crimes to which he pleaded guilty. In this case, the only evidence shows Mr. Massey is guilty.

{¶52} The first and second issues lack merit, as does the assignment of error.

{¶53} The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.