[Cite as *Simko v. Simko*, 2018-Ohio-2577.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

KATHY A. SIMKO,                         :        **O P I N I O N**

      Plaintiff-Appellant,        :

      - vs -                              :        **CASE NO. 2017-A-0053**

MICHAEL A. SIMKO,                  :

      Defendant-Appellee.      :

Appeal from the Ashtabula County Court of Common Pleas, Case No. 2016 DR 0176.

Judgment: Affirmed.

*William P. Bobulsky,* William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Plaintiff-Appellant).

*Virginia K. Miller,* Smith & Miller, 36 West Jefferson Street, #1, Jefferson, OH 44047 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, Kathy A. Simko ("wife"), appeals the judgment of the Ashtabula County Court of Common Pleas awarding her spousal support. At issue is whether the trial court abused its discretion in entering its award. For the reasons that follow, we affirm.

{¶2}    Wife and appellee, Michael A. Simko, were married in 1978. Both worked during the marriage and they had no children. They were married for 37 years and

separated in December 2015. At that time, husband was 73 years old and wife was 64. On April 29, 2016, wife filed her complaint for divorce.  Husband filed an answer.

{¶3} On December 13, 2016, the case came on for final hearing on the complaint before the magistrate.  At that hearing, the parties settled the issues of grounds for divorce and division of property and debt.  Husband worked for Boilermakers from 1969 to 1999, when he retired.  The parties agreed they would equally divide the marital portion of husband's pension from Boilermakers accumulated during the parties' marriage from 1978 to 1999. Husband also agreed to pay wife $27,244 from his Prudential annuity to equalize other property.  Each agreed to pay the credit card debt accumulated in his or her name.  The parties' marital residence was over-mortgaged.  Husband agreed to re-finance the home in order to remove wife from the mortgage and, if he could not do so within six months, husband would sell the home and the parties would divide any net proceeds equally or be responsible for one-half of the deficiency.   The parties submitted the only remaining issue, i.e., spousal support, to the magistrate.  The hearing proceeded on this issue.

{¶4} Husband's annual pension from Boilermakers is $66,478 gross. He also receives about $20,783/year in Social Security and $7,816/year in Veteran's Administration retirement benefits for a service-related injury that occurred in the middle 1960s, long before the marriage.  Husband also earns $28,200/year from his current job as a van driver for disabled patients; however, because he is 73 and has health issues resulting from two replaced knees, he plans to retire soon.

{¶5} Wife worked full-time throughout the marriage.  She worked as an administrator for a dental practice from 1978 until 1995.  She then worked for AAA as a

2

travel agent for 20 years until April 29, 2016, when she quit her job; filed this action; and moved to Las Vegas. At that time, she was earning $36,000/year.

{¶6} Wife testified she was asking for one-half of the marital portion of husband's pension, which is $22,655/year. Wife qualified for Social Security and Medicare as of the date of the hearing, and was entitled to receive Social Security benefits at that time in the amount of $1,491/month, but instead opted to wait until May 19, 2018, when she will turn 66 and receive $1,657/month ($19,884/year) in Social Security.

{¶7} The magistrate noted that the income the parties will receive from the property division is not equal. Wife's share of husband's pension will be about one-half the amount received by husband. This is because he worked ten years at Boilermakers before the marriage, and that portion is not subject to division. Wife's income from Social Security will be $19,844, which is about the same as husband's Social Security benefit. Wife will not share in husband's Veterans' Administration retirement benefit ($7,816/year) as it accrued before the marriage. The magistrate noted that wife has the ability to earn $36,000/year based on her earnings from her last position with AAA, which she voluntarily left in April 2016. The magistrate found that wife should be able to earn at least a minimum wage ($16,952/year) until she retires and imputed that amount to her.

{¶8} The magistrate ordered husband to pay $3,250/month in spousal support retroactive to April 29, 2016, the date wife filed her motion for temporary orders, and ordered that amount to carry forward as an order of spousal support until wife begins receiving her share of the Boilermakers' pension. At that time, spousal support would

3

be reduced to $2,350/month until May 19, 2018, when she will be 66 and qualify for full Social Security benefits. At that time, spousal support would again be reduced to $1,250/month until either party dies.

{¶9} Husband filed objections to the magistrate's decision, arguing the award in favor of wife was excessive as it was based on the magistrate's decision to only impute a minimum-wage income to wife, rather than the $36,000/year she was earning before she quit her job and moved to Las Vegas. Wife filed a brief in opposition.

{¶10} Following a hearing on the objections, the trial court approved most of the magistrate's findings; however, the court sustained husband's objections, concluding that the magistrate "failed to properly consider the fact that, upon filing for divorce, [wife] voluntarily and without adequate reason quit a job that she had for over twenty years making $36,000 per year, and moved to Las Vegas." As a result, the court modified the magistrate's two-tiered spousal support order to $1,000/month once husband's pension was divided until the death of either party. This was based on the court's finding that wife has the ability to earn $36,000/year based on her income from AAA, which she voluntarily left in April 2016.

{¶11} Wife appeals, asserting two assignments of error. For her first, she alleges:

{¶12} "The trial court erred in granting the objection by Appellee-Husband to the Magistrate's Decision of February 23, 2017, by reducing the award of spousal support to Appellant-Wife to $1,000 monthly."

{¶13} "In divorce * * * proceedings, upon the request of either party * * *, the court of common pleas may award reasonable spousal support to either party. During

4

the pendency of any divorce, * * * the court may award reasonable temporary spousal support to either party." R.C. 3105.18(B).

{¶14} "In determining whether spousal support is appropriate and reasonable, * * *, the court shall consider all of the following factors: (a) The income of the parties * * *; (b) The relative earning abilities of the parties; (c) The ages and the physical * * * condition[ ] of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; * * * (g) The standard of living of the parties established during the marriage; * * * (i) The relative assets and liabilities of the parties * * *; * * * (n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C)(1).

{¶15} A trial court's judgment regarding whether to adopt, reject, or modify a magistrate's decision is reviewed for abuse of discretion. *Lucas v. Lucas*, 11th Dist. Lake No. 2007-L-058, 2007-Ohio-5607, ¶10. Similarly, we review an award of spousal support for abuse of discretion. *Albrecht v. Albrecht*, 11th Dist. Trumbull No. 2013-T-0124, 2014-Ohio-5464, ¶13.

{¶16} With respect to imputed income, this court, in *Ebbinghaus v. Ebbinghaus*, 11th Dist. Geauga No. 2008-G-2853, 2009-Ohio-1000, ¶18, stated:

{¶17} Ohio courts have determined that one's earning ability under R.C. 3105.18(C)(1)(b) involves "'both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment.'" *Seaburn v. Seaburn*, 5th Dist. Stark No. 2004CA00343, 2005-Ohio-4722, ¶32, quoting *Haninger v. Haninger*, 8 Ohio App.3d 286, 288 (10th Dist.1982); *see, also, Noe v. Noe*, 6th Dist. Lucas No. L-94-077, 1995 WL 570589 (Sept. 29, 1995). When considering a party's relative earning ability as it relates to a spousal support analysis, courts do not confine their inquiry to the amount of money actually earned, but may also hold a party accountable for that amount of money a party is able to earn were he to make the effort. *Seaburn, supra; see, also, Beekman v. Beekman*, 10th Dist. Franklin No. 90AP780, 1991 WL 160062 (Aug. 15, 1991). Accordingly, a trial court may impute

5

income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential. *Beekman, supra; see, also, Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶17; *Seaburn*, at ¶33.

**{¶18}** Wife argues the trial court abused its discretion in sustaining husband's objection to the magistrate's decision and in awarding her $1,000/month ($12,000/year) in spousal support because this results in a disparity of the parties' incomes. Wife cites no case law holding that a disparity in the parties' income equates to an abuse of discretion. Rather, the test is whether the award is appropriate and reasonable.

**{¶19}** As a preliminary matter, we note that wife's charts purporting to show the parties' respective incomes for spousal support purposes as a result of the magistrate's/court's awards are incorrect in several respects, e.g., the charts omit funds that the magistrate and the court imputed to wife and add retirement benefits to husband's income that accrued long before the marriage in order to show a greater disparity in the parties' incomes than the facts would support.

**{¶20}** Wife argues that, after she starts receiving Social Security in May 2018, her total annual income will only be $54,539, as opposed to husband's $88,622 income. However, she fails to take into account the $36,000 the court imputed to her (or the $16,952 the magistrate imputed to her). Further, by adding husband's $7,816/year VA disability retirement benefit for a pre-marital, service-related injury to husband's income, wife ignores the fact that this benefit is not subject to division. Wife does not appeal the trial court's failure to divide this benefit between husband and wife, thus waiving any argument that she is entitled to share that benefit. Subtracting $7,816 from husband's income results in his income being $80,806, and imputing $36,000 to wife results in her income being $90,539. These figures are reflected in the chart that follows.

6

**{¶21} PARTIES' ANNUAL INCOMES AFTER MAY 2018**

**HUSBAND'S INCOME**

| | |
|---|---|
| BOILERMAKERS PENSION | $43,823 |
| SOCIAL SECURITY | $20,783 |
| AMBULANCE SERVICE JOB | $16,200 ($28,200-$12,000 to wife) |
| **TOTAL** | **$80,806** |

**WIFE'S INCOME**

| | |
|---|---|
| BOILERMAKERS PENSION | $22,655 |
| SPOUSAL SUPPORT | $12,000 |
| SOCIAL SECURITY | $19,844 |
| IMPUTED INCOME FROM AAA | $36,000 |
| **TOTAL** | **$90,499** |

**{¶22}** In these circumstances, wife is hardly in a position to argue that the court's award of spousal support results in an unfair disparity between the parties' incomes.

**{¶23}** Contrary to wife's argument, in reducing wife's spousal support to $12,000/year, the court considered all pertinent factors under R.C. 3105.18(C) in calculating her spousal support. These factors included (a) the parties' respective incomes; (b) the parties' relative earning abilities, including their actual and imputed incomes and the fact that husband intends to retire in the near future, while wife intends to continue working full-time; (c) the parties' ages and physical conditions; and (d) the retirement benefits of the parties, including the fact that husband's Boilermakers' pension accumulated in part prior to the parties' marriage and his entire VA retirement benefit accumulated prior to the marriage.

{¶24} We therefore hold the trial court did not abuse its discretion in awarding to wife $12,000/year from the date she begins to receive her portion of husband's Boilermakers' pension.

{¶25} For her second and last assignment of error, wife alleges:

{¶26} "The trial court erred in granting the objection by appellee-husband to the magistrate's decision of February 23, 2017, by reducing the award of spousal support to appellant-wife in determining that she voluntarily and without reason quit her position of employment."

{¶27} Wife argues the trial court's finding that she voluntarily and without adequate reason quit her job at AAA disregarded her testimony regarding the combined effects of her age, job stress, and spinal stenosis.

{¶28} While Ohio courts do not require a medical diagnosis to support a finding that a spouse is unable to work, in reviewing the trial court's determination of a spouse's alleged disability, an appellate court defers to the trial court's determination of the witnesses' credibility. *Albrecht, supra,* at ¶23.

{¶29} Here, the trial court found that wife, who was 64 years old, voluntarily quit her job at AAA without providing the court with an adequate reason to explain why she quit a good job that she was able to perform for 20 years making $36,000/year. When asked why she left her job, she testified she "was under a lot of duress between work and [her] personal life." Although wife argues on appeal that she quit her job in part due to her spinal stenosis and pain, the record does not support this argument. She testified her decision to quit was based solely on stress from her job and personal life. Wife never testified that she is unable to work or disabled and never said her physical

condition played any part in her decision to quit her job. When asked if she had any physical problems, she testified she has spinal stenosis. However, she said she has had this condition for 25 years. She said that within the last five years, she has been taking epidural injections, which have been effective in controlling her pain so surgery is not necessary.

{¶30} Further, wife testified that since she quit her job at AAA, she has had two jobs in Las Vegas selling timeshare real estate, but quit both jobs, one because she was not making enough money and the other because they would not give her time off to attend these proceedings. She said that she has decided to return to Ohio in December 2016 and that she was going to look for a job after the holidays in January. She said she has worked full-time her whole life and wants to do that again, preferably in the field of dentistry.

{¶31} Thus, the record supports the trial court's finding that wife voluntarily left her job at AAA without providing an adequate reason for leaving.

{¶32} We therefore hold that the trial court did not abuse its discretion in concluding that wife voluntarily quit her job; in imputing her salary at AAA to her; and in awarding her $1,000/month in spousal support until either party dies .

{¶33} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

9

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶34} I respectfully dissent.

{¶35} A trial court's judgment regarding whether to adopt, reject, or modify a magistrate's decision is reviewed for abuse of discretion. *Lucas v. Lucas,* 11th Dist. Lake No. 2007-L-058, 2007-Ohio-5607, ¶10. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶36} R.C. 3105.18, "Spousal support," states in part:

{¶37} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶38} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶39} "(b) The relative earning abilities of the parties;

{¶40} "(c) The ages and the physical, mental, and emotional conditions of the parties;

10

**{¶41}** "(d) The retirement benefits of the parties;

**{¶42}** "(e) The duration of the marriage;

**{¶43}** "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

**{¶44}** "(g) The standard of living of the parties established during the marriage;

**{¶45}** "(h) The relative extent of education of the parties;

**{¶46}** "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

**{¶47}** "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

**{¶48}** "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

**{¶49}** "(l) The tax consequences, for each party, of an award of spousal support;

**{¶50}** "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

**{¶51}** "(n) Any other factor that the court expressly finds to be relevant and equitable."

**{¶52}** The magistrate considered and made relevant findings regarding the foregoing R.C. 3105.18(C)(1)(a)-(n) factors: the income of the parties from all sources;

11

the relative earning abilities of the parties; the ages and conditions of the parties (Wife is 65, suffers from severe spinal stenosis, left her employment due to stress at the job, and has been actively seeking other employment … Husband is 73, and has continued with his job); the retirement benefits of the parties; the 37-year duration of the marriage; the standard of living during the marriage (both parties worked and accumulated large debt); neither party has any higher education; the relative assets and liabilities; the tax consequences (Husband may deduct spousal support … Wife must claim same); any other factor (Husband's benefits are lifetime … Wife's benefits terminate upon the death of Husband).

{¶53} This writer finds the trial court erred in modifying and reducing the award of spousal support to Wife to $1,000 per month, essentially punishing Wife for quitting a $36,000 per year job even though Wife is 65, suffers from severe spinal stenosis, left her employment due to stress at the job, and has been actively seeking other employment. The conclusion reached by the court either overlooked or completely disregarded the uncontradicted testimony by Wife relative to the combined effects of her age, job stress, spinal stenosis, and associated levels of pain.

{¶54} The court gave no direct attention to the figures which create a substantial disparity between the parties' post-divorce financial conditions. It also appears the court gave no consideration to the ages of the parties relative to continuing employment nor to the differences in their ages and the associated effect of the death of Husband upon the spousal support award. Husband's objections amounted to a statement that he does not wish to pay spousal support, not that he is unable to do so. To the contrary, Husband's standard of living and lifestyle will be substantially better than that of Wife

under the circumstances of the order.  Due to the disparity, I believe the trial court's award should be vacated and the amount reconsidered.  *See e.g. Madcharo v. Madcharo*, 9th Dist. Lorain No. 14CA010547, 2015-Ohio-2191.

{¶55}  I respectfully dissent.